**Linda K. KOTZBAUER, Appellee**

v.

**Robert J. KOTZBAUER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 19, 2007.

Filed Nov. 28, 2007.

Joseph M. Spratt, Bridgewater, for appellant.

Terri J. Mitko, Beaver, for appellee.

BEFORE: ORIE MELVIN, BOWES and McCAFFERY, JJ.

OPINION BY BOWES, J.:

¶ 1 Robert Kotzbauer ("Father") appeals from the March 13, 2007 order directing him to make monthly support payments for his nineteen-year-old daughter, Kaitlin Kotzbauer, who resides with Appellee Linda Kotzbauer ("Mother"). After careful review, we affirm.

¶ 2 The trial court summarized the relevant facts as follows:

Mother requested support for the parties' daughter Kaitlin Kotzbauer, beyond the normal age for emancipation. Kaitlin is 18 years old and a high school graduate. When Kaitlin was in high school, she was diagnosed with epilepsy. In February 2004, she underwent brain surgery for the seizures she was suffering. Prior to her surgery, she was a normal, active teenager with no learning disabilities or memory problems. Following this surgery, she began to have problems with her memory and ability to focus. She needed learning support for all, but one, of her classes. Her grades dropped. Additionally, she needed more sleep, and was tired all the time. She continued to have seizures, though they are currently under control. She now suffers from severe headaches, including migraine headaches, and she remains at risk for seizures.

In addition to epilepsy, Kaitlin also suffers from cavernous malformations on her brain. At least one of those malformations had been leaking blood. She has undergone several MRI's to check on these malformations. The malformations do not presently require surgery.

Kaitlin is being monitored by Dr. [Dade] Lunsford for her brain malformations. He consults with other doctors on Kaitlin's condition. Kaitlin also sees a headache specialist, Dr. [Barbara] Vogler. If Kaitlin's brain malformations have residual bleeding in the future, she may need Gamma Knife Radiosurgery. She takes several prescriptions and over the counter medications for her conditions. Mother pays approximately $200–$250 per month on co-pays for doctor visits and medications for Kaitlin. Mother watches Kaitlin closely on a daily basis, to supervise her medication regimen and her behavior. Kaitlin is subject to mood swings, rapid heartbeat, and possibly becoming suicidal or extremely depressed.

Kaitlin is currently attending the Butler County Community College in Cranberry Township as a full-time student, in part, so that she may remain on Father's health insurance. She is taking the minimum number of credits, 12, because school work is difficult for her. At the time of the [support] hearing, she had a D in two of her four classes. She is afraid to go away to school on her own, without someone to watch over her and her medical treatment. Neither she, nor her mother, believes that Kaitlin is capable of living on her own. Her college is paid by a[n] UGMA account set up for her when she was little.

Kaitlin took part in a theater production in July 2006, but was unable to participate in the production in January 2007. Kaitlin works at Linens and Things for an average of 16 hours per week, where she earns $7.38 per hour. She does not have full-time hours available to her. She uses her money to pay for car insurance, cell-phone bills, and

gas. She relies on her mother for food, clothing, shelter, and her medication.

Kaitlin has headaches three to four times per week, and once a week she suffers from a migraine headache. Several times she has left work because of her headaches; in fact, someone had to pick her up from work because she was unable to drive. Occasionally Mother sleeps in bed with Kaitlin, when Kaitlin is sick, in case Kaitlin has to go to the hospital.

Kaitlin is able to drive, but if she gets a severe headache, her mother or her older brother, Jason, must be available to pick her up from work or school. Her headaches have gotten significantly worse from April 2006 through September 2006.

Kaitlin is in the process of applying for social security disability benefits. No decision has been made regarding her eligibility for those benefits.

Mother is employed as a pilot crew scheduler for U.S. Airways. She works 40 hours per week and earns $22.77 per hour. She is not paid for the time she takes off to take Kaitlin to her medical appointments. Her net income is $3,014 per month.

Father is employed as a teacher for the Moon Area School District. He is paid a salary. His net income is $4,428 per month. He provides medical insurance to Kaitlin through his employer at no cost to him.

Trial Court Opinion, 5/18/07, at 2–4.

■■■ ¶ 3 Following a December 5, 2006 evidentiary hearing, the trial court entered a support order directing Father to pay $398 per month for his daughter's care. Father's motion for reconsideration was denied, and this timely appeal followed, wherein he contends that the trial court erred in: (1) finding that Kaitlin has a health condition that prevents her from obtaining profitable employment at a supporting wage; (2) finding that the evidence was sufficient to continue Father's child support obligation; (3) failing to require Mother to offer uncontradictory medical opinions regarding Kaitlin's physical infirmities; and (4) applying the Pennsylvania child support guidelines in a case where the subject of the support order is over eighteen years old, has graduated from high school, and has a part-time job.

In reviewing an order entered in a support proceeding, an appellate court has a limited scope of review. The trial court possesses wide discretion as to the proper amount of child support and a reviewing court will not interfere with the determination of the court below unless there has been a clear abuse of discretion. *Commonwealth ex rel. Berry v. Berry*, 253 Pa.Super. 268, 384 A.2d 1337 (1978). The function of the appellate court is to determine whether there is sufficient evidence to sustain the order of the hearing judge. *Commonwealth ex rel. O'Hey v. McCurdy*, 199 Pa.Super. 115, 184 A.2d 291 (1962). *Commonwealth ex rel. Cann v. Cann*, 274 Pa.Super. 274, 418 A.2d 403, 404–405 (1980); *accord Crawford v. Crawford*, 429 Pa.Super. 540, 633 A.2d 155 (1993) (in challenging the validity of a support order, the appellant must demonstrate by clear and convincing evidence that an abuse of discretion has occurred). An abuse of discretion is not merely an error of judgment; rather, it occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, bias, or ill will. *In the Interest of M.S.K.*, 2007 PA Super 323, 936 A.2d 103.

■■ ¶ 4 At the outset, we recognize that as a general rule, the duty to support a child ends when the child turns eighteen or graduates from high school. *Hanson v.*

*Hanson,* 425 Pa.Super. 508, 625 A.2d 1212 (1993). However, pursuant to 23 Pa.C.S. § 4321(3), a parent may be required to support a child who, upon reaching the age of majority, has a mental or physical condition that prevents the child from being self-supporting. *Id.* "To determine if an order of support is appropriate, the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Id.* at 1214.

■ ¶ 5 Father's first three arguments are interrelated and will be addressed *seriatim.* The crux of Father's position is that there was insufficient evidence to sustain a finding that Kaitlin has a medical condition that prevents her from obtaining profitable employment at a supporting wage. In leveling this claim, Father argues that: (1) Mother failed to prove that Kaitlin is not emancipated because there was no expert testimony indicating that Kaitlin cannot live independently of Mother; (2) Dr. Lunsford had very little contact with Kaitlin prior to the evidentiary hearing and was unqualified to render an opinion as to how Kaitlin's brain malformations and seizure disorder affect her daily activities; and (3) the trial court ignored testimony that Kaitlin has an "active lifestyle and good health." Father's brief at 15.

¶ 6 The following facts are relevant to our disposition of this issue. At the evidentiary hearing, Mother, Kaitlin, and Cynthia Dewyer, the assistant manager at the Linens 'N Things store in Cranberry, all testified regarding Kaitlin's medical problems. Ms. Dewyer stated that Kaitlin has worked at the store for approximately eighteen months, that Kaitlin has "had several migraines while ... at work," and that on various occasions, Kaitlin has had to miss work, leave early, or take a thirty-minute break due to a migraine headache.

N.T. Hearing, 12/5/06, at 5. When asked to describe how these headaches affect Kaitlin's job performance, Ms. Dewyer responded:

> She can't concentrate. She basically almost curls into a ball when [the headaches] are very severe, which has happened twice. The one time she was writing, and you couldn't read anything that she wrote. She was missing letters off of words. It made no sense. The words were going down the page at an angle, just nothing made sense.

*Id.* at 6. Ms. Dewyer also indicated that Kaitlin currently works between sixteen to twenty hours per week, that no additional hours are being offered to her at this time, and that the company actually suggested that Kaitlin take a leave of absence, which Kaitlin has declined.

¶ 7 Mother confirmed that Kaitlin had left work early on multiple occasions after suffering debilitating migraine headaches and testified that Kaitlin takes numerous medications that make her "extremely tired." *Id.* at 33. Mother spends approximately $240 per month in co-payments for medications; Kaitlin depends on her mother to monitor her medicinal intake and schedule doctor appointments. *Id.* at 36, 41. In spite of her health problems, Kaitlin "tries very, very hard to be independent" and earns enough money through her part-time job to pay for her car insurance, cellular telephone bills, and occasional lunches at Butler County Community College. *Id.* at 42.

¶ 8 Finally, Kaitlin testified that as a result of her condition, she has earned poor grades at college and is essentially dependent on her mother, who provides food, clothing, and medicine for Kaitlin and who ensures that Kaitlin takes her medicine at the appropriate times. When asked to describe her migraine headaches, Kaitlin answered:

[W]hen I do get a headache, I get what's called tunnel vision where I can't-I don't have any peripheral vision whatsoever. I get very nauseous. I get numbness in my hands and my feet and in my mouth. I can't talk. I can't really understand a lot of things that are going on around me. I can't write. I have a very hard time creating any sentence to be able to communicate with people. I stagger when I walk, and I become very scared. I get very, very emotional. I sometimes cry, and I can't stop.

*Id.* at 65. Kaitlin further testified that she suffers approximately three to four headaches per week and that she telephones Mother frequently to report on her physical status whenever she is away from home. On cross-examination, Kaitlin conceded that she has a valid driver's license, that she is capable of driving herself to work and school, that she went deer hunting shortly before the evidentiary hearing, and that she previously appeared as a featured dancer in various on-stage productions at a local theater.

¶ 9 Father also took the stand, stating that he and Kaitlin have a very strained relationship. He proffered that Kaitlin rarely telephones or visits him and that during a recent visit, she asked whether he planned to retire, because his retirement may affect her health insurance. Although Father acknowledged that Kaitlin has brain malformations, that she underwent brain surgery in 2004 after suffering a seizure, and that she now takes medications and has annual magnetic resonance imaging ("MRI") scans to monitor her condition, Father's counsel suggested throughout Mother's case-in-chief that Kaitlin has exaggerated the frequency and

magnitude of her headaches. On appeal, Father continues in this vein, arguing that Mother is attempting to "manipulate the Court system" by needlessly prolonging his child support obligation. Father's brief at 6.

¶ 10 As noted above, Father presently contends that the evidence was insufficient to sustain the trial court's determination for three reasons. Initially, Father argues that Mother could not satisfy her burden of proof in this action absent expert testimony that Kaitlin's health disorders prevent her from earning a supporting wage. Father does not cite any pertinent legal authority for this proposition; rather, he identifies similar cases where physicians testified at the support hearing and suggests that expert medical testimony is required in every case where support is sought under 23 Pa.C.S. § 4321(3).[1] We disagree.

¶ 11 Like the trial court, we uncovered no case law that supports Father's position. Moreover, we decline to fault Mother for failing to call an expert witness when it was undisputed that the parties' child underwent brain surgery after developing seizures, and three lay witnesses, Kaitlin, Mother, and Ms. Dewyer, testified that Kaitlin cannot maintain full-time employment because she suffers from acute migraine headaches that frequently interfere with her existing work schedule. The trial court had the benefit of viewing these witnesses and was free to accept their testimony. *See McClain v. McClain,* 872 A.2d 856 (Pa.Super.2005) (fact-finder is free to weigh the evidence presented and assess its credibility).

¶ 12 In a related argument, Father asserts that Dr. Lunsford, a neurosurgeon

---

1. Section 4321(3) states, "Parents may be liable for the support of their children who are 18 years of age or older."

who was deposed in this matter and drafted two letters on Kaitlin's behalf at Mother's request,[2] was unqualified to render a competent opinion on any relevant issues at the support hearing because Dr. Lunsford conceded during his deposition that he did not perform the 2004 surgery and that he examined Kaitlin only one time. Consistent with this view, Father continues that his support obligation should be terminated because the trial court "relied exclusively on Dr. Lunsford's medical opinion as to [Kaitlin's] inability to care for herself. . . ." Father's brief at 8.

¶ 13 As a preliminary matter, we agree with Father that Dr. Lunsford's deposition testimony and correspondence had little probative value because Dr. Lunsford had limited knowledge of Kaitlin's condition prior to the support hearing, and his letters simply conveyed hearsay information provided by Mother for use at the support hearing. Nevertheless, we decline to grant relief on this issue because the record demonstrates that the trial court considered Dr. Lunsford's observations only for the purpose of verifying that Kaitlin has brain malformations, that she remains at risk of having seizures, and that she is not a candidate for gamma knife radiosurgery at this time. See Trial Court Opinion, 5/18/07, at 6. Contrary to Father's position, Dr. Lunsford did not offer an expert opinion regarding Kaitlin's ability to support herself, and the trial court did not rely exclusively upon Dr. Lunsford's letters and deposition testimony in determining that Kaitlin is currently unable to earn a supporting wage. The court explained its decision regarding that issue as follows:

We found the testimony of Kaitlin, her mother (the Plaintiff), and her employer, Cynthia Dewyer from Linens and Things, to be credible. We do not believe that Kaitlin can work 40 hours per week, due to her health condition, even if 40 hours per week were available to her. We also find that Kaitlin does not have 40 hours of work available to her at this time. Testimony revealed that Kaitlin still relies on her parents for her medical insurance and most of her daily needs. She is not capable of providing for herself at this time. She does not have medical insurance available to her, which she direly needs and which her Father can provide at no cost. She has extraordinary medical bills each month for her co-pays and prescriptions, for which she cannot pay. Thus, we held that Kaitlin is not emancipated at this time.

. . . .

[Father] is incorrect in stating that no expert testimony was presented regarding Kaitlin's medical condition. Dr. Lunsford testified that Kaitlin has a condition called multiple cavernous malformation of the brain. He also noted that she has other issues associated in some patients with cavernous malformations, a history of seizures and headaches. While she is not a candidate for gamma knife radiosurgery at this time, she is being treated by medical neurology for

2. Dr. Lunsford's letters were entered into evidence without objection at the conclusion of the December 5, 2006 hearing. The first letter stated that Kaitlin is dependent on Mother for daily care, and the second letter indicated that Kaitlin is not capable of supporting herself. At the hearing, Mother admitted that she asked Dr. Lunsford to write those letters to establish Kaitlin's medical condition for the purpose of obtaining child support. See N.T. Hearing, 12/5/06, at 55. The deposition testimony, which was admitted into evidence at a subsequent proceeding, offered little insight into Kaitlin's ability to support herself, as Dr. Lunsford admitted that he had never treated Kaitlin and examined her on only one occasion.

management of her headache syndrome and is being observed under Dr. Lunsford's care. Dr. Lunsford further testified that whether Kaitlin could continue to work depends on the frequency and severity of the headache and whether working exacerbates the headache. Dr. Lunsford also testified about the side effects of her medications, and observed that Kaitlin remains at risk for seizures.

Although the doctor did not give an expert opinion on whether Kaitlin could continue to work, Kaitlin, her employer, and her mother all testified that Kaitlin's headaches, and the side effects of her medications, affect her ability to work. This is consistent with patients who suffer from her condition.

Trial Court Opinion, 5/18/07, at 5–6 (citations to record omitted). As the record fully supports the trial court's conclusions and establishes that Dr. Lunsford did not offer an expert opinion as to whether Kaitlin was capable of self-support, Father's second claim is meritless.

▌ ¶ 14 Father's third argument is that the trial court abused its discretion in continuing his support obligation because Kaitlin admitted on cross-examination that she recently went deer hunting, danced in theater productions, attended a pool party, and drives an automobile on a regular basis. See Father's brief at 14–15. Father contends that these activities, coupled with Ms. Dewyer's testimony that Kaitlin has only had to leave work three times in the last eighteen months due to headaches, demonstrate that Kaitlin is in good health and maintains an "active lifestyle." Id. at 15.

¶ 15 " 'Emancipation' is a question of fact to be determined by the circumstances presented in each case." Geiger v. Rouse, 715 A.2d 454, 458 (Pa.Super.1998) (quoting Maurer v. Maurer, 382 Pa.Super. 468, 555 A.2d 1294, 1297–98 (1989)). In the instant case, the trial court heard unrebutted testimony that Kaitlin's migraines have a profound impact on her daily activities, as she must take prescription medicines that drain her energy. The fact that Kaitlin occasionally engages in activities that require physical exertion does not prove that she is emancipated. Furthermore, Kaitlin testified that in recent months, her headaches have become increasingly severe and "much more frequent," and as a result, she is no longer capable of dancing in the local theater productions. N.T. Hearing, 12/15/06, at 100. Thus, in light of the record, we will not find an abuse of discretion where, as here, there was ample evidence to sustain the trial court's ruling.

▌ ¶ 16 Father's final contention on appeal is that the trial court erred in applying the Pennsylvania child support guidelines in this case because Kaitlin is in college, her tuition is paid out of a Uniform Gifts to Minors Act ("UGMA") account,[3] and she has a part-time job. Father argues that given these facts, the trial court should have employed a "needs-based" analysis to determine his support obligation. Father's brief at 21.

¶ 17 Upon review, we find that no relief is due. In his three-paragraph argument on this issue, Father does not explain why the existing award is excessive, and in any event, the trial court correctly observed that the guidelines are applicable when a party requests support for an adult child who has a mental or physical condition that prevents the child from earning a

3. An UGMA account is a vehicle for giving property to a minor; the custodian has a fiduciary duty to manage, invest, and use the funds for the minor's benefit and act in the minor's interest. See Sutliff v. Sutliff, 515 Pa. 393, 528 A.2d 1318 (1987); see also 55 Pa. Code § 178.78.

supporting wage. *See Crawford v. Crawford, supra* at 163–64. Accordingly, we see no reason to disturb the order in question.

¶ 18 Order affirmed.