J-A28035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C. A. M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| D. J. B. | |
| Appellee | No. 1138 EDA 2014 |

Appeal from the Order Entered March 13, 2014
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 009506296 PACSES No. 769004157

BEFORE:  GANTMAN, P.J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:               **FILED DECEMBER 16, 2014**

C. A. M. ("Mother") appeals from the March 13, 2014 order denying Mother's exceptions to the December 5, 2013 order granting the petition of D. J. B. ("Father") to terminate the current order of support.  After careful review, we affirm.

Mother and Father's nineteen-year-old daughter, M. B. on ("M."), has a number of ongoing mental health issues.  At age 16, M. was diagnosed with Bipolar Disorder, Type 1, with psychotic illness.  At age 18, she was diagnosed with a Schizoaffective Disorder and Generalized Anxiety Disorder.  Currently, M. has diagnoses of Schizophrenia, chronic paranoid type, and Generalized Anxiety Disorder.  As a result of these conditions, M. suffers from auditory and visual hallucinations that have required institutionalization in October 2011 and October 2012.  M.'s conditions cause her to, *inter alia*,

hear voices and experience suicidal and homicidal ideations. She also has trouble completing activities of daily living. M.'s treatment consists of therapy and anti-psychotic medications. Despite her mental health issues, M. graduated from Cardinal O'Hara High School on June 5, 2013, and currently attends Neumann University on a full scholarship.

On June 13, 2013, seven months after M.'s 18th birthday,[1] Father filed a Petition to Terminate Child Support ("Petition to Terminate"), stating that M. had reached the age of majority. A Support Master ("Master") conducted a hearing on the Petition to Terminate on August 29, 2013. On September 3, 2013, the Master filed a proposed order terminating child support, setting arrears to zero effective August 29, 2013, and releasing monies on hold. *See* Proposed Order and Master's Report, September 3, 2013. On September 23, 2013, Mother filed exceptions to the proposed order in the Philadelphia County Court of Common Pleas. Following a hearing, the lower court granted the exceptions and remanded the matter to the Master to conduct a hearing to determine whether M. was emancipated for the purposes of support. In other words, the hearing was for the purpose of determining whether M. had the ability to support herself.

The Master conducted the second support hearing on November 19, 2013. After hearing the evidence presented, including the testimony of M.'s

---

[1] M. turned 18 on November 7, 2012.

psychiatrist, Dr. Noah Freedman, the Master concluded M. was emancipated for the purposes of support and filed a second proposed order on December 5, 2013 that again granted Father's Petition to Terminate. **See** Proposed Order and Master's Report, December 5, 2013 ("Second Proposed Order" and "Second Master's Report"). The Second Master's Report explains the decision to grant the Petition to Terminate as follows:

> The subject child is 18 years old and graduated high school, and is in fact, on a full scholarship to Neumann University where she received $42,000.00 in scholarship money from a "Presidential academic scholarship."

> Based on the Master's own previous observations and testimony and evidence presented by all parties–including the subject child's therapist, the Master does not find that the physical and mental disabilities outlined for the subject child should prevent her from working and supporting herself either now or in the future.

> . . .

> The Master again finds that based on his own observations, and the testimony given, the child in question seems capable of functioning in a normal capacity, and certainly has the ability to maintain employment which would allow her to earn a sufficient living in the future.

> Without evidence to the contrary, this Master again has no choice but to find that the child M. is capable of supporting herself in a working capacity.

> [Mother] has [again] not met her burden of proving that the subject child cannot be engaged in profitable employment and whether employment is available to her at a supporting wage.

> The Master did find the [treating psychologist's] testimony to be credible. But the Master finds that based on the [treating psychologist's] own testimony he cannot say for certain that the subject child will not be able to maintain sufficient employment

- 3 -

as he [has] not conducted any type of vocational neurological study.

**See** Second Master's Report, p. 5 (internal record citations omitted).

Ultimately, the Second Master's Report concluded:

After considering the totality of the circumstances and all other relevant factors in this case, this Master again hereby finds that the subject child in this case is emancipated for purposes of support as [Mother] has not met her burden to this Master to show why the current support order should not be terminated due to emancipation.

**Id.**

On December 24, 2013, Mother filed exceptions to the Second Master's Report. After a hearing on the second set of exceptions, on March 13, 2014, the lower court denied the exceptions and adopted the Second Proposed Order as its order terminating the child support. On April 11, 2014, Mother timely appealed the court's order.

Mother raises the following issues for our review:

A. Did the [t]rial [c]ourt err in confirming the Master's determination that the subject child is emancipated for purposes of support, as the subject child's psychiatric disabilities prevent her from working and independently supporting herself?

B. Did the [t]rial [c]ourt err in confirming the Master's failure to properly consider the testimony of Mother, the child, and the child's psychiatrist, which detailed the child's mental state and the debilitating nature of the child's condition and established that she is not capable of maintaining self-supporting employment?

C. Did the [t]rial [c]ourt err in confirming the Master's error in giving substantial weight to his observations of the child over a brief period of time as a basis for his finding that the child could secure and maintain appropriate employment?

D.  Did the [t]rial [c]ourt err in confirming the Master's error in finding that Mother had failed to prove that the child cannot be engaged in profitable employment and whether employment is available to her at a supporting wage, as credible evidence established the conditions existing that prevent her from obtaining self-sustaining employment including the child's failed efforts to obtain even part-time employment?

E.  Did the [t]rial [c]ourt err in confirming the Master's error in placing undue weight on the child's attendance at Neumann University with a scholarship as the school has minimal admission criteria, the child has received substantial accommodations, daily assistance from Mother, and the scholarship criteria was met only on account of the child's high school academic performance before the debilitating onset of her illness?

F.  Did the [t]rial [c]ourt err in confirming the Master's error in finding that, because the psychiatrist opined that the child might benefit from a neuro-psychological and vocational evaluation to determine what types of supports she would need in a workplace environment but did not conduct the test, that Mother had not met her burden of proof?

G.  Did the [t]rial [c]ourt err in confirming the Master's error in disregarding **Commonwealth ex rel. Cann v. Cann**,[2] which held that the presumption of emancipation upon the attainment of the age of majority is rebutted by evidence establishing conditions which show that the subject child is incapable of self-support, and where [F]ather failed to establish that the child is capable of earning some income and that the child was able to earn a sufficient living to be entirely self-supporting?

H.  Did the [t]rial [c]ourt err in declining to consider that the child had been medically approved for social security disability benefits subsequent to the Master's hearing and report and recommendation but prior to the argument in support of her exceptions to the Master's proposed order, the fact of which the [t]rial [c]ourt was made aware at the argument on exceptions?

_____

[2] 418 A.2d 403 (Pa.Super.1980).

Mother's Brief, pp. 2-4.

We begin by noting the applicable scope and standard of review for appeals from support orders:

> In reviewing an order entered in a support proceeding, an appellate court has a limited scope of review. The trial court possesses wide discretion as to the proper amount of child support and a reviewing court will not interfere with the determination of the court below unless there has been a clear abuse of discretion. The function of the appellate court is to determine whether there is sufficient evidence to sustain the order of the hearing judge. An abuse of discretion is not merely an error of judgment; rather, it occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, bias or ill-will.

*Style v. Shaub*, 955 A.2d 403, 406-07 (Pa.Super.2008). Additionally, we note that when evaluating the merits of a party's exceptions to a master's report, a lower court must first examine the master's report. This Court has noted:

> [A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa.Super.2011). It is the lower court's deferential review of the Second Master's Report that we now review for an abuse of discretion. *See Style*, *supra*.

In Pennsylvania, parents are generally liable for the support of their unemancipated children aged 18 and younger. 23 Pa.C.S. § 4321(2). However, parents may also be liable for the support of their children who are

18 years or older, if they remain unemancipated. 23 Pa.C.S. § 4321(3). As this Court has explained:

> In Pennsylvania, the duty to support a child generally ceases when the child reaches the age of majority, which is defined as either eighteen years of age or when the child graduates from high school, whichever comes later. 23 [Pa.C.S.] § 4321(3), however, provides that the parents may be liable for the support of their children who are 18 years of age or older. In applying section 4321(3), this Court has found that there is a presumption that the duty to support a child ends when the child reaches majority:
>
>> Ordinarily a parent is not required to support his adult child but there is a well recognized exception supported by abundant authority that where such child is too feeble physically or mentally to support itself the duty on the parent continues after the child has attained its majority.
>
> This presumption is not rebuttable if the child becomes disabled only *after* reaching the age of majority. The public policy behind such rationale is apparent, as there must be a logical end point to a parent's obligation to support his or her child. Otherwise, an adult child could theoretically sue their elderly parents for support after sustaining a debilitating injury well after reaching the age of majority.
>
> When the disability resulting in the child's inability to be self-sufficient already exists at the time the child reaches the age of majority, however, the presumption is rebuttable by the adult child upon proof that there are conditions that make it impossible for her or him to be employed.

***Style***, 955 A.2d at 408-409 (internal quotations, brackets, and citations omitted).

"Emancipation is a question of fact to be determined by the circumstances presented in each case." ***Kotzbauer v. Kotzbauer***, 937 A.2d 487, 493 (Pa.Super.2007) (internal quotation marks and citation

omitted). "There are varying circumstances which we must consider in determining whether a child is emancipated. These include, but are not limited to, the child's age, marital status, ability to support himself or herself, and [the] desire to live independently of his or her parents." ***Nicholason v. Follweiler***, 735 A.2d 1275, 1278 (Pa.Super.1999) (internal citation and brackets omitted). The burden to demonstrate some defect, mental or physical, rendering self-support unfeasible or employment impossible rests with the child or parent challenging the presumption of emancipation. ***Brown v. Brown***, 474 A.2d 1168, 1169 (Pa.Super.1984); ***see also Style***, 955 A.2d at 409.[3]

Four of Mother's claims allege slightly different aspects of the single argument that the lower court erred in confirming the Master's determination that M. is emancipated for support purposes because the

---

[3] Mother cites ***Commonwealth ex rel. Cann v. Cann, 418 A.2d 403, 404 (Pa.Super.1980),*** for the proposition that, to justify termination, the burden rests with Father, as the moving party, to demonstrate that M. is capable of earning a sufficient living to be entirely self-supporting. ***See*** Mother's Brief, pp. 30-31. She is incorrect. Although ***Cann*** held in 1980 that a party moving for termination must demonstrate that a would-be-terminated child could support him/herself, our Supreme Court and this Court subsequently made clear that, in accordance with 23 Pa.C.S. § 4321, a rebuttable presumption that a child is emancipated arises upon the later of the child's 18th birthday or high school graduation. ***See Blue v. Blue***, 616 A.2d 628 (Pa.1992); ***see also*** 23 Pa.C.S. § 4321; Pa.R.C.P. 1910.19. The burden of rebutting the presumption is on the child or parent seeking to continue support. ***See***, ***e.g.***, ***Style***, 955 A.2d at 408; ***Kotzbauer***, 937 A.2d at 490; ***Heitzman-Nolte v. Nolte***, 837 A.2d 1182, 1184 (Pa.Super.2003). Accordingly, Mother bore the burden of proof in this matter, and her claim to the contrary fails. ***See*** Mother's Brief, pp. 42-43 (claim G).

hearing testimony established that M.'s issues do not prevent her from obtaining self-sustaining employment.[4]  **See** Mother's Brief, pp. 14-25, 29-

_____

[4] First, in claim A, Mother alleges that the Master, and therefore the lower court, erred because M.'s mental issues have rendered her unable to work. **See** Mother's Brief, p. 14-20.  Mother avers that, "[a]s a result of daily hallucinations, [M.] has difficulty focusing on anything for any significant period of time and requires continuous prompts and monitoring from her mother to perform even basic repetitive hygiene functions."  **Id.** at 16-17.  She states that M. applied for two part-time jobs and, although she was interviewed for one position, she was not offered a position.  **Id.** at 17-18.  Mother further avers that, "even if [M.] were offered work, it is evident that she would not be able to complete an eight hour work day[M.] much less a 40 hour work week."  **Id.** at 18.  As a result of these claims, Mother argues M. should not be considered emancipated.  **Id.**

Second, in claim B, Mother's alleges that the Master, and therefore the lower court, failed to properly consider the testimony of Mother, M., and M.'s psychologist, which Mother claims established that M. is incapable of maintaining self-supporting employment.  **See** Mother's Brief, pp. 20-25.  Mother avers that all three witnesses testified that M. was incapable of focusing on a specific task for any significant time, as evidenced by M.'s academic struggles in her later high school years, the necessary accommodations at Neumann University, and Mother's continued need to guide M. in every aspect of her life.  **Id.** at 22.

Third, in claim D, Mother argues the lower court erred in confirming the Master's finding that Mother failed to prove that M. cannot become engaged in profitable employment because the evidence established that M. was unable to obtain a part-time job.  **See** Mother's Brief, pp. 29-31.  Mother claims her own testimony and that of M. established M. had not been offered the part-time jobs for which she had applied.  **Id.** at 30.  Mother claims that "[M's] constant need for support, prompts, reminders, seclusion, on-site counseling and irregular breaks and absences renders full-time work an impossibility."  **Id.**  Additionally, relying on **Cann**, **supra**, Mother claims "where conditions creating the child's disability are established, it becomes the burden of the party seeking to terminate a support order to demonstrate the child's ability to be self-sustaining."  **Id.**

*(Footnote Continued Next Page)*

31, 35-52. In other words, Mother insists that M.'s mental health issues prevent her from attaining and maintaining work which is fully self-supportive. We will address these inter-connected claims as one claim.

As discussed *supra*, after multiple hearings, and based on the testimony presented and the Master's own observations, the Master stated that he "does not find that the physical and mental disabilities outlined for [M.] should prevent her from working and supporting herself either now or in the future." Second Master's Report, p. 5. Based upon the Second Master's Report, the lower court concluded as follows:

> In the instant case, the court relied on the Master's report and his assessment of testimony and credibility, and concluded that based on the totality of the circumstances and all other relevant factors in this case, that the subject child in this case was emancipated for purposes of support.

Pa.R.A.P. 1925(a) Opinion, May 14, 2014 ("1925(a) Opinion"), p. 4.

The lower court explained that Mother failed to adduce adequate evidence to sustain her burden of proving that conditions make employment impossible for M. The court stated:

---

*(Footnote Continued)*  ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺

Fourth, in claim F, Mother claims the Master erred in determining that she could not meet her burden of proof in the absence of a neuro-psychological and vocational evaluation. *See* Mother's Brief, p. 41. Mother avers the testimony of Dr. Noah Freedman sufficiently illustrated that, without the support M. receives from Mother, M. would be unable to manage sustained employment, such that a vocational evaluation was not necessary. *Id.* at 39.

In the instant case, Mother's Exceptions claim [M.'s] mental and psychological disabilities prevent her from working and independently supporting herself. The court relied on the Master's consideration of the testimony of the child's psychiatrist, Dr. Noah Freedman, who diagnosed [M. as] suffer[ing] from schizophrenia and chronic paranoia. However, the Master also found the doctor's testimony credible that he could not say for certain that the subject child would not be able to maintain sufficient employment as he had not conducted any type of vocational neurological study.

1925(a) Opinion, p. 5.

Ultimately, the lower court concluded the Second Master's Report was supported by credible evidence and adopted the Second Proposed Order terminating Father's support obligations as its own. The Second Master's Report was entitled to credence from the lower court. **See Childress**, 12 A.3d 448, 455-56 (Pa.Super.2011) ("[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties."). Based on our standard of review, the lower court did not abuse its discretion by adopting the Second Proposed Order finding that M. was emancipated, and these claims fail.[5]

_____

[5] We note that Mother is correct that expert testimony is not required for Mother to meet her burden of proof. **See Kotzbauer**, 937 A.2d at 491. However, the absence of such a requirement does not obviate the requirement that Mother offer credible evidence that M. is incapable of obtaining profitable employment at a supporting wage. After reviewing the Second Master's Report, which indicated that Dr. Freedman could not say with certainty that M. was incapable of attaining sufficient employment, the
*(Footnote Continued Next Page)*

Two of Mother's claims allege the Master erred by employing flawed methodology in arriving at the determinations in his report, and that the lower court erroneously approved the flawed methodology in its order. **See** Mother's Brief, pp. 25-29, 31-35. Mother alleges that the Master (1) relied too heavily on his own observations of M.,[6] and (2) placed undue weight on M.'s attendance at Neumann University.[7] Mother is incorrect.

A fact-finder who has the benefit of viewing testimony live is free to weigh the testimony and make credibility determinations thereon. **See**

---
*(Footnote Continued)* ─────────────

lower court concluded that Mother failed to satisfy this burden. Specifically, the Second Master's Report found Dr. Freedman's testimony equivocal in the absence of neurological vocational studies. **See** Master's Report, p. 5. The lower court's decision to credit the Master's findings is not manifestly unreasonable, and Mother's claim F fails.

[6] In claim C, Mother argues the lower court erred in confirming the Master's findings because the Master based his findings partially on his personal observations of M. **See** Mother's Brief, pp. 25-29. Mother alleges that the Master observed M. for at most thirty minutes, at a time when M. was groomed and medicated and was prepared to answer questions on a known subject in a controlled environment. **Id.** at 26. Mother avers M.'s performance at the hearing "is in no way indicative of an ability to perform any type of job-related task without direct and constant supervision." **Id.**

[7] In claim E, Mother claims the Master placed undue weight on M.'s attendance at Neumann University and her receipt of an academic scholarship. **See** Claim E, Mother's Brief, pp. 31-35. Mother claims that M.'s attendance at Neumann University should not be equated with her ability to work a full-time job, because the University provides M. with accommodations that would not be available at a job. **Id.** at 33-34. Additionally, Mother argues Neumann University offered M. her scholarship based on M's academic performance during her first two years of high school – before M. was diagnosed with her serious mental health issues. **Id.** at 34.

***Kotzbauer***, 937 A.2d at 491. Accordingly, the lower court did not abuse its discretion in deferring to the Master's credibility determinations based on his observations of M. at the hearings. Mother's claim C fails.

Likewise, as discussed ***supra***, the lower court did not err in deferring to the Master's conclusion that the testimony and evidence presented failed to establish that M. is incapable of maintaining employment that would allow her to earn a sufficient living in the future. This testimony and evidence included testimony about M.'s scholarship to Neumann University. We find no error in the lower court's deference to the Master's conclusions on Mother's claim E regarding M.'s Neumann University scholarship.

Finally, Mother's claim that the lower court erred in not considering M.'s post-hearing medical approval to receive social security disability ("SSI") benefits[8] is unavailing. ***See*** Mother's Brief, pp. 43-47 (claim H).

Initially, the Master did not have evidence of M.'s medical approval of SSI benefits before him either at the time of the hearing or the date of the Second Master's Report. Accordingly, evidence of such approval formed no part of those proceedings, the Second Master's Report, or Mother's exceptions thereon. Additionally, during the lower court hearing on Mother's exceptions, Mother did not proffer evidence that M. had been approved for

---

[8] Between the time of the November 19, 2013 Master's hearing and the March 13, 2014 hearing on Mother's exceptions, the Social Security Administration approved M. for disability benefits. M. is now approved to receive supplemental security income.

SSI benefits and did not argue that an SSI benefits determination is determinative. Further, Mother cites no controlling case law specifying the conclusive effect of an SSI eligibility determination on the determination of emancipation for support purposes. Accordingly, Mother's claim fails.

Order affirmed.

President Judge Gantman joins in the memorandum.

Judge Wecht concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2014