J-S71003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHARON L. BUCHANAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARRY W. BUCHANAN IV | : | No. 2186 EDA 2019 |

Appeal from the Order Entered July 9, 2019
In the Court of Common Pleas of Lehigh County Domestic Relations at
No(s):  Docket No. DR-00-00546,
PACSES No. 400102086

BEFORE:  BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 26, 2020**

Sharon L. Buchanan ("Mother") appeals the July 9, 2019 order sustaining the exceptions filed by Harry W. Buchanan ("Father") to the recommended support order directing him to make monthly support payments for his nineteen-year-old daughter, Bonnie Buchanan.  After careful review, we affirm.

This contentious support litigation precedes the April 2000 birth of Bonnie, who was added to Mother's then-pending petition for support for herself and Bonnie's older sibling.[1]  During 2014, Bonnie contracted the Epstein-Barr virus and a streptococcal infection that caused a cascading array

---

[1] The spousal support obligation terminated effective October 1, 2008.  The sibling was removed from the support order effective November 10, 2016, having attained the age of majority.

of symptoms and neurological conditions that were not diagnosed properly for several years. Her most recent diagnoses revealed the contraction of Lyme disease and postural orthostatic tachycardia syndrome.

Bonnie attained the age of majority in April 2018 and graduated from high school two months later. On December 13, 2018, and January 24, 2019, a domestic relations hearing officer heard evidence concerning Mother's position that her daughter's mental and physical health conditions permitted her to rebut the presumption of emancipation embodied in 23 Pa.C.S. § 4321(3), which provides, "Parents may be liable for the support of their children who are 18 years of age or older." Specifically, the hearing officer considered testimony from Bonnie and her psychiatrist, Lantie Elisabeth Jordanby, M.D., who has treated Bonnie since April 2018. Dr. Jordanby testified that Bonnie suffers from, *inter alia*, headaches, light sensitivity, low blood pressure, and neurocognitive symptoms such as depression, anxiety, and attention deficit. These conditions impact Bonnie's executive functioning and ability to complete everyday tasks. Dr. Jordanby explained, "she's not able to really maintain good short-term memory. She has periods where . . . she'll have brain fog where she just has difficulty clearing her head, thinking clearly, being able to focus well . . . [and] difficulty maintaining concentration on projects." N.T., 12/13/18, at 24. Dr. Jordanby continued that Bonnie has tolerated treatments and made modest improvements "with her overall status." *Id*. at 33. She opined, "it's going to take a while for her to really

beat all. In fact, I'd imagine probably by April of next year [(2019)] we'll see significant improvement." *Id*.

Bonnie testified about her problems with fatigue, dizzy spells, chest pain, and gastrointestinal complications. N.T., 1/24/19, 10-11. As it relates to the reasons that she has never sought employment, Bonnie stated that she cannot look at screens or read print for more than ten minutes. *Id*. at 19. She also indicated that she cannot stand in one place for longer than a couple minutes without getting dizzy, suffering migraines, or experiencing chest pains. *Id*. Notwithstanding these impediments to employment, Bonnie declined to file for disability insurance, stating "my mom and I just have an understanding that I'm too sick to work and that's as far as our discussions go." *Id*. at 35. Nevertheless, she stated a desire to work fulltime after she attains her college degree "and maybe even more school after that." *Id*. 37.

Father did not present any evidence, ostensibly, because the presumption favored terminating the child support obligation. On March 1, 2019, the hearing officer issued a report finding in favor of Mother, and on March 7, 2019, the trial court entered a child support order that, *inter alia*, directed Father to pay $4,181.66 per month in child support and $420.00 for arrears. Father filed timely exceptions, and after argument and the filing of briefs, the trial court sustained Father's exceptions, vacated the March 7, 2019 child support order, and terminated Father's support obligation effective June 14, 2018.

This timely appeal followed. As Mother and the trial court both complied with Pa.R.A.P. 1925, the appeal is ripe for our review. Mother presents one compound issue on appeal:

> Did the trial court commit an error of law and abuse its discretion in its order of court entered on July 9, 2019, by failing to place sufficient weight on the findings of the domestic relations support hearing officer, . . . and did the trial court commit an error of law and abuse its discretion in its order of court originally entered on July 9, 2019, by failing to place sufficient weight on the testimony of [Mother's] witness, the child's doctor, Lantie Jorandby M.D.[?]

Mother's brief at 6 (unnecessary capitalization omitted).

We review child support matters for an abuse of discretion, which occurs if the law is misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. *T.M.W. v. N.J.W.*, --- A.3d ---- (Pa.Super, 2020), 2020 PA Super 17, 2020 WL 502527, *2. The issue of a child's "[e]mancipation is a question of fact to be determined by the circumstances presented in each case." *Kotzbauer v. Kotzbauer*, 937 A.2d 487, 493 (Pa.Super.2007) (citation omitted). "[T]he test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." *Id*. at 490 (quoting *Hanson v. Hanson*, 625 A.2d 1212, 1214 (Pa.Super. 1993)).

While the principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses,

> the duty to support a child ends when the child turns eighteen or graduates from high school. However, pursuant to 23 Pa.C.S. § 4321(3), a parent may be required to support a child who, upon reaching the age of majority, has a mental or physical condition that prevents the child from being self-supporting.

*Id*. at 489-90 (Pa.Super. 2007) (cleaned up). As we have stated, "The adult child . . . bears the burden of proving the conditions that make it impossible for her . . . to be employed." *Heitzman-Nolte v. Nolte*, 837 A.2d 1182, 1184 (Pa. Super. 2003). Furthermore, "a parent is only called upon to support an adult child to the extent the child cannot aid him or herself." *Crawford v. Crawford*, 633 A.2d. 155, 161 (Pa.Super. 1993).

Mother asserts that the trial court "cavalierly disregard[ed]" the hearing officer's factual findings and conclusions and discounted the testimony presented by Dr. Jordanby, who testified as an expert in psychiatry. Mother's brief at 11. Mother's argument is founded on the proposition that the trial court could not disturb the determination of the child support hearing officer absent an abuse of discretion. While Mother cites *Johnson v. Johnson*, 529 A.2d 1123 (Pa.Super 1987) to support this argument, her reliance upon *Johnson*, is inapt because that equitable distribution case does not address a trial court's reverence for a hearing officer's determination. To the contrary, that case simply reiterated the well-ensconced standard of review that **this Court** applies to the trial court as the ultimate arbiter of fact. *Id*. at 412. ("Under this standard, we do not usurp the hearing court's duty as factfinder.

Rather, we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretion.").

In actuality, the findings of a child support hearing officer are "only advisory and not in any way binding on the trial court." ***Ewing v. Ewing***, 843 A.2d 1282, 1286 (Pa.Super. 2004) (quoting ***Goodman v. Goodman***, 544 A.2d 1033, 1035 (Pa.Super. 1988)). Rather, "it is the sole province and the responsibility of the court to set an award of support and even if the evidence before the Support Hearing Officer is adequate to support her recommendation, the trial court need not adopt it." ***Id.*** (cleaned up). Stated another way, the trial court is required to make an independent assessment of the hearing officer's report and recommendations. ***Kohl v. Kohl***, 564 A.2d 222, 224 (Pa.Super. 1989). "The reviewing court must consider the evidence, its weight and the credibility of the witnesses, *de novo*. The . . . report is not controlling, either on the lower court or on the appellate court." ***Rothrock v. Rothrock***, 765 A.2d 400, 404 (Pa. Super. 2000). The one often-stated exception to this rule, which relates to credibility determinations, is best described as follows: "not to say that the master's conclusions regarding credibility are binding on the reviewing court, but where the record alone does not indicate which party's testimony should be credited, the determination of the master can tip the balance." ***Id***.

Instantly, the trial court accepted the hearing officer's factual findings in performing its independent assessment of the hearing officer's report and

recommendations. Indeed, while the trial court reached a different outcome as to the question of emancipation, a non-deferential legal question, the trial court did not make any independent factual findings or credibility determinations. As outlined below, the trial court adopted the hearing officer's factual summary. Thus, we reject Mother's contention that the trial court abused its discretion by ruling contrary to the hearing officer's ultimate conclusion.

We also reject Mother's assertion that the trial court disregarded Dr. Jordanby's testimony because she did not specifically opine about Bonnie's ability to work. Mother's brief at 17. The trial court considered all of Mother's evidence, including Dr. Jordanby's description of Bonnie's numerous ailments and their effect on her ability to perform daily tasks. Specifically, the trial court noted,

> the Domestic Relations Hearing Officer relied on the testimony of Bonnie's psychiatrist regarding symptoms of chronic fatigue, cluster headaches, chronic immune deficiency, depression, anxiety and poor executive function. The psychiatrist testified regarding the diagnosis of Lyme disease. While Bonnie's psychiatrist testified that Bonnie's treatment plan is complex and she has difficulties with day-to-day activities, the psychiatrist did not opine that any of these issues prevent Bonnie from being self-supporting or make it impossible for her to be employed. In fact, while the psychiatrist testified that Bonnie has difficulty with day-to-day activities, difficulty getting to school, difficulty maintaining a level of energy she went on to offer "[i]t isn't that she isn't able to do these things, but it takes significant effort." At many points in the psychologist's testimony she referred to the "difficulty" Bonnie experiences with things like clearing her head, thinking clearly, being able to focus well, maintaining focus, and maintaining concentration on projects. However, while the psychiatrist opined that Bonnie has "difficulties," none of the

psychiatrist's testimony amounts to evidence that it is impossible for Bonnie to maintain employment. In fact, the psychiatrist went on to express some of the medicines and treatments administered and that Bonnie has had some modest improvement with her overall status. The psychiatrist offered "[i]n fact, I'd imagine probably by April of next year we'll see significant improvement."

Further reliance by the Domestic Relations Hearing Officer was given to Bonnie's testimony that she suffers from blurry vision, light sensitivity, has a hard time reading for more than a few minutes at a time, feels discomfort after looking at a computer screen for any appreciable amount of time, gets dizzy and vomits. While Bonnie testified that it is hard for her to focus or read a book for more than ten minutes and that lights bother her, she did not indicate that it was impossible or that she was unable to do such tasks.

Trial Court Opinion, 7/9/19, at 3-4 (citations to record omitted).

In addition, the trial court considered Bonnie's testimony that, while she never attempted to work, she was "a really good college student[, who does not] miss classes," even enduring lighting that bothers her vision. N.T., 1/24/19, 24, 29. It also noted Mother's explanation for neglecting to apply for disability benefits for her daughter, *i.e.*, "Bonnie won't allow [it because she] does not want to be labeled." N.T., 12/13/18, at 45.

While Mother was not required to present expert testimony regarding her employability, she was required to demonstrate that Bonnie could not support herself with the available employment opportunities. The obvious implication of Dr. Jordanby's testimony regarding Bonnie's difficulties was that Bonnie's conditions would impact her ability to complete potential work-related tasks. Contrary to Mother's protestations, however, the testimony did

not establish that the health disorders prevented Bonnie from earning a supporting wage.

Our decision in **Kotzbauer supra**, which both parties cite in their respective briefs, informs our review. In that case, we upheld the trial court's determination that Kaitlin, a nineteen-year old woman with brain malformations, was not emancipated even though she was cable of attending college, maintaining employment, and engaging in certain leisure activities. At the time of the hearing in **Kotzbauer**, Kaitlin was a full-time student at a local community college, in part, so that she could remain on her father's health insurance. She suffered three to four debilitating headaches per week, including migraines, and the headaches got significantly worse in the six months preceding the evidentiary hearing. Kaitlin's condition made it difficult to complete school work, and she struggled to maintain the minimum of twelve credit hours that full-time students were expected to complete. She resided with her mother, who provided food, clothing, shelter, and medication. She was anxious about living independently because she required supervision and assistance with her medical treatment.

In addition to attending community college, Kaitlin worked part-time at a retail store earning $7.38 per hour. Her employer did not offer her a full-time position, and it suggested that she take a leave of absence due to her health concerns. While Kaitlin declined that offer, she applied for social security disability benefits, but had not received a decision as of the hearing.

The treating physician in **Kotzbauer** testified that Kaitlin's continued ability to work was dependent on the frequency and severity of her headaches and observed that Kaitlin remains at risk for seizures, which is consistent with patients who suffer from her condition.

In light of the forgoing facts, the trial court determined that the nineteen year-old was not an emancipated child. We affirmed, reasoning, in part,

> it was undisputed that [Kaitlin] underwent brain surgery after developing seizures, and three lay witnesses, Kaitlin, Mother, and [her work supervisor], testified that Kaitlin cannot maintain full-time employment because she suffers from acute migraine headaches that frequently interfere with her existing work schedule.

**Kotzbauer**, **supra** at 491.

The facts of the case at bar do not align with the facts that drove our rationale in **Kotzbauer**. Unlike the adult child in that case, who struggled to maintain the minimum level of college credits and was totally dependent on her mother, Bonnie is capable of exceling at college, albeit with substantial effort. She lives independently in a dormitory, and although her numerous health problems encumber her daily routine, those conditions are improving. Moreover, while the adult child in **Kotzbauer** attempted employment and failed, which is confirmation of her lack of self-sufficiency, Mother neglected to present similar evidence that Bonnie was incapable of self-support. In sum, while the clear implication of Dr. Jordanby's testimony is that employment would be physically and mentally demanding, Mother did not adduce evidence that Bonnie was incapable of engaging in profitable employment, nor did she

- 10 -

establish that employment was not available to Bonnie at a supporting wage. Hence, she did not rebut the presumption of emancipation. *Id*. at 490; *Hanson*, *supra* at 1214 ("test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage.").

Accordingly, we see no reason to disturb the order in question.

Order affirmed.

Judge Murray joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2020