J-A29045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TINA D. BALWICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARRY R. BALWICK, SR. | : | |
| | : | |
| Appellant | : | No. 475 WDA 2021 |

Appeal from the Order Entered March 15, 2021
In the Court of Common Pleas of Erie County Domestic Relations at
No(s): NS202000836

BEFORE: BENDER, P.J.E., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED: NOVEMBER 29, 2021**

Harry R. Balwick, Sr. (Father) appeals from a Court of Common Pleas of Erie County (trial court) order directing him to make monthly support payments for Randal Balwick (Randal), his adult son. We affirm.

We glean the following facts from the certified record. Tina D. Balwick (Mother) and Father were married in 1981 and Randal was born in 1988. The parties separated in December 2019. The next year, Mother filed a complaint for support seeking, *inter alia*, child support for Randal, who lives with her. While Randal was 32 at the time she filed the petition, Mother said that Randal has severe dyslexia that prevents him from obtaining a full-time job, supporting himself or living independently.

---

[*] Retired Senior Judge assigned to the Superior Court.

At the domestic relations conference, Father opposed the child support, arguing that Randal was capable of obtaining full-time employment to support himself. The matter was then referred to the trial court for a trial.

At trial, Mother submitted a "Disabled Dependent Certification Form" that had been completed by Randal's physician in 2014. The form stated that Randal had a "learning disability" coded as dyslexia since birth and that he was "70%" disabled. It stated that he was "unable to read, drive, care for self." Under "prognosis for employment" the doctor wrote "limited to menial, 100% supervised work." Mother also submitted a letter stating that Randal's application for Supplemental Security Income (SSI) had been denied because of the money in his savings account.[1] Randal's application for Social Security Disability payments was still pending. Finally, counsel for mother averred that Randal had earned $4,345.04 in his job as a dishwasher in the previous year.

Mother was the sole witness at the hearing. She testified that Randal was 33 years old and employed as a dishwasher in the Millcreek High School cafeteria. He began working there when he was 21 years old and obtained the job through his life skills class at the school. He works 3 hours per day on Tuesdays through Fridays. He had attempted to advance into other

---

[1] Mother also attempted to submit a letter from Randal's employer. The trial court sustained Father's objection and excluded the letter as hearsay.

positions at the cafeteria but was not placed in those positions because of his limited reading skills and comprehension.

Mother testified that she did not believe Randal would be able to care for himself without her. He cannot drive or take the driver's license exam. He worked with a tutor to reach a first-grade reading level as an adult but those sessions stopped when the family could no longer afford them. Mother testified that she attempts to give Randal some freedom with his bank accounts but that he needs assistance reading the ATM and balancing the account. He does not pay bills but helps with cooking and cleaning at home. He is not able to take the bus. Mother ensures that his day-to-day needs are met and testified that Father only asked Randal if he would like to move in with him after he learned that Mother would be seeking child support. Mother said that Randal is able to wake up in the morning, dress himself and walk to work without prompting.

On cross-examination, Mother explained that Exhibit A listed dyslexia as Randal's formal diagnosis, but that he also struggles with comprehension in conversation and did not speak at all until he was 5 years old. She did not have any additional documents or medical diagnoses to explain Randal's disabilities. When asked if she had ever sought work for Randal outside of the cafeteria, she said that she had not because Randal would be unable to perform other jobs. She testified that he would not be able to work in a maintenance position that would require him to read anything. She had not

attempted to find a position for him where he could be accommodated with verbal instructions and did not believe that such a position existed. She could not find another tutor who worked with adults to work with him after losing his former tutor. She did not believe Randal would ever become fully literate, even with the help of a tutor.

The trial court took the matter under advisement before issuing an order directing Father to pay child support in the amount of $961.97 per month.[2] Father timely appealed and he and the trial court have complied with Pa. R.A.P. 1925.

Father raises one issue on appeal: whether there was sufficient evidence to support the trial court's conclusion that Randal is incapable of self-support.[3] He argues that Mother failed to establish that Randal is incapable

---

[2] The trial court also ordered Father to pay $473.82 per month in alimony *pendente lite* and $215 per month toward arrears.

[3]

> Our review of the trial court's order is limited to determining whether the trial court abused its discretion and whether there is insufficient evidence to support the order. When evaluating a [child] support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*(Footnote Continued Next Page)*

of engaging in profitable employment or that there are no jobs available to him at a supporting wage. We disagree.

A parent's duty to support a child generally ends when the child reaches the age of majority or graduates high school, whichever comes later. **Somerset County Children & Youth Servs. v. H.B.R.**, 155 A.3d 627, 629 (Pa. Super. 2017); 23 Pa.C.S. § 4321. However, a parent may be required to support an adult child who "has a mental or physical condition that prevents the child from being self-supporting." **Somerset County Children & Youth Servs.**, **supra** (citation omitted). "To determine if an order of support is appropriate, the test is whether the child is physically and mentally able to engage in profitable employment and whether employment is available to that child at a supporting wage." **Kotzbauer v. Kotzbauer**, 937 A.2d 487, 490 (Pa. Super. 2007) (citation omitted).

Father relies on **Style v. Shaub**, 955 A.2d 403 (Pa. Super. 2009), in support of his argument that Mother failed to prove that Randal is physically or mentally incapable of engaging in profitable employment. There, the trial court determined that the adult child was not incapable of self-support because he had been able to hold certain jobs notwithstanding his psychiatric and medical disabilities. The child's vocational evaluator through a residential program for individuals with disabilities testified that he was able to perform

---

**T.M.W. v. N.J.W.**, 227 A.3d 940, 944 (Pa. Super. 2020) (cleaned up).

kitchen or custodial work slowly but consistently with some supervision. The evaluator opined that with continued treatment for his disabilities, the child could enter the workforce. The trial court credited this testimony in determining that the child was not incapable of self-support. This Court affirmed, finding that the evidence established that with continued treatment and in the right type of work environment, the child was capable of supporting himself. *Id.* at 410. Moreover, the record established that there were jobs available to the child that he was able to perform.

The instant case is distinguishable. In *Style*, an independent witness from the adult child's treatment program testified that with continued treatment, he would be able to support himself in jobs with minimal distractions and sufficient supervision. The record supported this opinion, as the child had successfully held a position as a dishwasher in the past but was unable to work in a retail position that required more concentration. Here, the form completed by Randal's physician stated that based on his learning disability, Randal was unable to care for himself and could only perform menial jobs with "100%" supervision. Unlike the evaluator in *Style*, Randal's physician did not opine that Randal was capable of supporting himself with proper treatment. In this case, the trial court principally relied upon Randal's physician's opinion in reaching its conclusion that Randal's learning disability prevented him from supporting himself independently. Trial Court Opinion, 5/19/21, at 5.

The form was corroborated by Mother's testimony, which the trial court also found credible. *Id.* at 6. Mother testified that Randal had attempted to advance into other positions in the cafeteria but was rejected because he could not read. She said that he would be unable to work any job that required any amount of reading and would struggle to comprehend verbal instruction as well. Moreover, even though Randal enjoyed his job and his coworkers, he worked only three hours per day and earned less than $5,000 in the year preceding the hearing. Based on this evidence, the trial court did not abuse its discretion in holding that Randal was unable to engage in profitable employment as a result of his learning disability.

Similarly, the trial court did not abuse its discretion in holding that there was no available employment for Randal at a self-supporting wage. ***Kotzbauer***, ***supra***. Again, Randal earned less than $5,000 per year in his job as a dishwasher at the Millcreek High School cafeteria, where he works three hours per school day during the school year. He obtained that job because he was a student in the life skills program at the high school and began working at the cafeteria when he aged out of the program at 21. He has held that position for over a decade but due to his learning disability, he has not been able to advance into any other position in the cafeteria. His physician opined that his job prospects are "limited to menial, 100% supervised work." Further, he is unable to work in any position that would require reading and he is unable to drive or take the bus by himself to work.

The trial court found credible Mother's testimony regarding Randal's inability to perform day-to-day tasks and her opinion that he would not be hired for any other position in the community because he is unable to perform those jobs. Under these circumstances, there is no basis to disturb the trial court's exercise of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/29/2021</u>