375 A.2d 96

**Sumner R. BARTON, Appellant,**

v.

**Betty M. BARTON.**

Superior Court of Pennsylvania.

Argued March 16, 1977.

Decided June 29, 1977.

Craig W. Bremer, Harrisburg, with him Thomas A. Beckley, Harrisburg, for appellant.

Charles J. DeHart, III, Harrisburg, with him Caldwell, Clouser & Kearns, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant, plaintiff in a divorce action in the court below, contends that the lower court erred when it granted appellee's exceptions to the master's recommendation that a divorce a. v. m.[1] be entered in appellant's favor. We agree, and, therefore, reverse the order of the lower court.

On October 17, 1974, appellant-husband filed a complaint in divorce in the Court of Common Pleas of Dauphin County. After the parties completed discovery, the lower court appointed a master to take testimony in the contested action. On February 21, 1975, the master conducted a hearing at which only appellant and appellee testified. The master's report, filed on May 19, 1975, recommended that the court grant the divorce. On December 2, 1975, the court en banc sustained appellee's exceptions to the report and dismissed the complaint. This appeal followed.

Appellant contends that the lower court erred when it substituted its own findings of facts for those made by the master. He further contends that if the court had accepted

1. Divorce Law, Act of May 2, 1929, P.L. 1237, § 10; as amended Act of March 19, 1943, P.L. 21, § 1; 23 P.S. § 10.

the master's findings, the evidence would have been sufficient to prove indignities to the person. Divorce Law, supra; 23 P.S. § 10.

The master's report made the following findings which are adequately supported by the record. The parties were married in Chicopee Falls, Massachusetts, on July 18, 1952. This was appellant's third marriage; the previous marriages terminated in divorce. It was appellee's first marriage. The couple has three children, two of whom were minors residing with appellee at the time of the hearing. The family moved to Mechanicsburg, Cumberland County, in 1969, where they lived until the couple separated in 1973.

The master found that grounds for divorce existed based on several events:

"4. The problems in this marriage began sometime in 1969. (N.T. 5).

"5. In 1969, [appellee] began drinking heavily, and this drinking increased to a frequency of about once a week, causing the [appellee] to prepare meals in an incomplete manner. (N.T. 5).

"6. [Appellee's] drinking caused [appellant] and [appellee] to get into arguments at dinner, resulting in [appellant's] becoming sick. (N.T. 10).

"7. [Appellee] would, on occasion, call [appellant] such names as 'piss-poor provider,' 'asshole,' 'no damn good bastard.' (N.T. 6).

"8. [Appellee] initiated arguments at bedtime with [appellant], thereby causing him to lose sleep and impair his performance at his job. (N.T. 10).

"9. The sexual relations between the parties deteriorated from 1969, eventually resulting in no sex life at all. (N.T. 7).

"10. [Appellee] refused to have sexual relations with [appellant] and berated [appellant] for wanting sex, informing [appellant] that 'his six months weren't up yet.' (N.T. 7, 22).

"11. [Appellee] never told [appellant] that she loved him and, in fact, she told [appellant] that she hated him, offering to pack his bags and throw him out. (N.T. 7, N.T. 17–18).

"12. On several occasions, [appellee] falsely accused [appellant] of infidelity and adultry. [sic] (N.T. 8).

"13. In January, 1973, while intoxicated, [appellee] attacked [appellant], burning him with a cigarette and scratching him on the neck. [Appellee's] hysteria was such that she had to be taken to the hospital where she and [appellant] were treated. The entire incident was witnessed by children of the parties. (N.T. 6).

"14. Before the parties separated, [appellant] frequently ate lunch with a woman with whom he later entered into a meretricious relationship. [Appellant] and this woman usually ate in the company of other people but, on occasion, they dined alone. (N.T. 14).[2]

"15. During the entire period of marriage, [appellant] had a substantial income and provided his family with all the material necessities and some luxuries. (N.T. 8–9)."

In addition, the master found that "[appellant] committed no acts which would justify [appellee's] actions toward him." In his discussion, the master stated explicitly that he found appellant "to be the more credible of the two parties and the Findings of Fact indicate that the Master has chosen to accept [appellant's] version" of the various events, despite appellee's denials of some of the facts.

The court concluded that appellant had not proven "a continuous course of conduct rendering [his] condition intolerable and life burdensome." In reaching that conclusion, however, the court rejected the master's findings and substituted its own. For example, the master found that "there is no evidence that [appellant's] relationship [with his fellow worker] prior to the parties' separation was anything beyond friendly. The [appellant] testified that he never had sexual

2. Finding 14 may seem ambiguous on first reading. However, the Master's discussion makes clear that he found that the "meretricious" relationship did not commence until after the separation.

relationships with another woman prior to his separation, and the Master chooses to believe this testimony." Nonetheless, the court rejected appellant's reliance on the wife's accusations of infidelity as a basis for a finding of indignities because it found that the wife's suspicions were reasonable. Compare *Yohey v. Yohey,* 205 Pa.Super. 329, 208 A.2d 902 (1965), with *Kramer v. Kramer,* 194 Pa.Super. 538, 168 A.2d 624 (1961), and *Barnes v. Barnes,* 181 Pa.Super. 427, 124 A.2d 646 (1956). In addition, the court found that there was no evidence of settled hatred, despite an explicit finding that appellee had told appellant of her hatred towards him. Finally, the court discounted appellee's intoxication and the unpleasantness and arguments precipitated by her drinking and found that appellant had failed in his obligation to seek professional assistance for his wife. The court noted further that ". . . [appellant] did not attempt to secure professional help but brought alcoholic beverages into their home. And, if [appellee] is believed, [appellant] mixed her drinks in their home." To the contrary, appellant testified that he only purchased one bottle of liquor for appellee as a Christmas present. He denied that he mixed his wife drinks.

Our scope of review in divorce matters is broad: ". . . when a divorce matter is heard by a judge sitting without jury, this Court must make a complete and independent review of the record of the proceedings below." *Gehris v. Gehris,* 233 Pa.Super. 144, 148, 334 A.2d 753, 755 (1975); *Eifert v. Eifert,* 219 Pa.Super. 373, 281 A.2d 657 (1971); *Del Vecchio v. Del Vecchio,* 169 Pa.Super. 617, 84 A.2d 261 (1951). There is an obvious exception to de novo review by a reviewing court, whether that court is a trial court examining the factual findings of a master, or an appellate court reviewing trial proceedings. ". . . [G]reat weight must be accorded to the findings of the court or master below if the issues of credibility are ones that are necessarily resolved by personal observations." *Gehris v. Gehris,* supra, 233 Pa.Super. at 148, 334 A.2d at 755. See also, *Dougherty v. Dougherty,* 235 Pa.Super. 122, 339 A.2d 81 (1975); *Uhlinger v. Uhlinger,* 169 Pa.Super. 574, 83 A.2d 423 (1951).

■ The instant case is within this exception. Although we realize that the lower court had a duty to review the record de novo, we believe that when, as here, the case amounts to a swearing contest and there is no other corroborating evidence, the master's report is entitled to special weight. In our de novo review, we too must accord the report particular weight for we have no adequate yardstick other than the master's assessment of credibility to determine which witness is worthy of belief.

■ Viewing the evidence presented at the hearing and credited by the master, we find that a grant of the divorce is proper. While our appellate courts have been reluctant to formulate a general definition of what constitutes "indignities," we have noted that indignities may consist of vulgarities, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, or malignant ridicule. *Gehris v. Gehris,* supra, 233 Pa.Super. at 147–48, 334 A.2d at 754–755. See also, *McKrell v. McKrell,* 352 Pa. 173, 42 A.2d 609 (1945); *Sells v. Sells,* 228 Pa.Super. 331, 323 A.2d 20 (1974); *Fodor v. Fodor,* 221 Pa.Super. 321, 292 A.2d 485 (1972); *Gerenback v. Gerenback,* 199 Pa.Super. 410, 186 A.2d 49 (1962). Obviously, several of the factors listed above may coalesce to justify a finding of indignities, although taken separately, no single incident or factor would be sufficient. See *Gehris v. Gehris,* supra.

In the instant case, the master found that appellant was an adequate provider and that he did not commit any acts which could justify the conduct complained of by appellant. Nonetheless, appellee subjected him to verbal abuse, to frequent bickering, and to false, unmerited accusations of adultery. Further, on at least one occasion, appellee physically attacked appellant. In addition, the non-existence of sexual relations may be taken as evidence of the couple's estrangement and her studied neglect. Finally, appellee's statement that she hated her husband supports a finding of indignities.

Thus, the court erred when it dismissed appellant's complaint because, in its view, he had failed to present sufficient

evidence. Therefore, we reverse the order of the lower court and remand so that an order granting a divorce a. v. m. in appellant's favor may be entered.

PRICE, J., dissents.