392 A.2d 747

**Morris Daniel MINTZ, Appellant,**

v.

**Jo Ann Walton MINTZ, Appellee.**

Superior Court of Pennsylvania.

Argued March 15, 1978.

Decided Oct. 20, 1978.

Gary M. Lightman, Harrisburg, for appellant.

Philip D. Freedman, Harrisburg, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

This case comes as an appeal from the decision of the lower court disapproving the recommendation of divorce submitted by the master. For the reasons set forth below,

we reverse the lower court and order that the master's recommendation be followed.

The parties were married on November 24, 1955. After sixteen years of marriage, appellant and appellee separated on December 27, 1971. On January 6, 1974, Morris Mintz, appellant, filed an action in divorce in the County of Dauphin against his wife, Jo Ann Mintz, appellee. On August 7, 1974 and October 7, 1974 the Master conducted hearings to consider testimony in support of the action in divorce. The hearings resolved into a credibility contest with appellant accusing appellee of misconduct entitling him to a divorce and appellee substantially denying the accusations. The master credited appellant's testimony stating in his report that he was impressed with appellant's forthrightness and restraint in giving his testimony without attempting to exaggerate beyond believability. The master found that appellant's testimony on cross examination was consistent with his testimony on direct, and concluded that appellant's credibility was established sufficiently to carry his complaint in divorce.

The lower court discounted the recommendation of the master because the master was extremely late in filing his report.[1] The lower court chose to draw its own conclusions regarding credibility, finding in favor of appellee. The sum of the court's analysis on this point consisted of the following:

"A careful and thorough review of the testimony convinces us that the plaintiff has not met his burden of proof. Almost all of the allegations set forth by plaintiff were denied by his wife. The facts that were corroborated were of little significance and the source was less than impartial."

We are not persuaded by the lower court's rationale. In general, a trial court examining the factual findings of a master or an appellate court reviewing trial

1. The Dauphin County Rules of Court require that the Master should file his report with the Prothonotary within sixty days after his appointment. The Master for this case did not file his report until two and half years had elapsed.

proceedings may use a broad scope of review, but great weight must nevertheless be accorded to the findings of the master or of the court below where issues of credibility must necessarily be resolved by personal observation. *Barton v. Barton*, 248 Pa.Super. 278, 375 A.2d 96 (1977). Therefore, although the findings of fact and the recommendations of the Master are usually considered as only advisory, an exception is made where the issue is one of credibility and the master is the one who heard and observed the witnesses. In that situation, the findings of the master should be given the fullest consideration. *DeBias v. DeBias*, 245 Pa.Super. 266, 369 A.2d 396 (1976); *Schrock v. Schrock*, 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975). This is not to say that the master's conclusions regarding credibility are binding on the reviewing court, but where the record alone does not indicate which party's testimony should be credited, the determination of the master can tip the balance. As we have said

"The obvious important exception to de novo review by a reviewing court is that great weight must be accorded to the findings of the court or master below if the issues of credibility are ones that are necessarily resolved by personal observations. For example, if the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and is the kind of evidence that cannot effectively be reviewed by an appellate court." (Citations omitted.) *Gehris v. Gehris*, 233 Pa.Super. 144, 148, 334 A.2d 753, 755 (1975).

Accordingly, we hold that the lower court erred in not giving appropriate weight and consideration to the master's findings regarding credibility.

The second issue we must resolve is whether appellant's evidence constitutes sufficient grounds for divorce based upon indignities.[2] There is no strict rule as to what specific conduct constitutes indignities; rather, this determi-

2. The Act of May 2, 1929, P.L. 1237, § 1 et seq. 23 P.S. § 10(f).

nation depends on the facts and circumstances of each case. *Riley v. Riley*, 246 Pa.Super. 265, 369 A.2d 1314; *Sells v. Sells*, 228 Pa.Super. 331, 323 A.2d 20 (1974). Past decisions tell us that indignities can be found in vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule or any other plain manifestation of settled hatred and estrangement. *Schrock v. Schrock*, 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gerenbeck v. Gerenbeck*, 199 Pa.Super. 410, 186 A.2d 49 (1962). Furthermore, the plaintiff must prove his case by a preponderance of clear and satisfactory evidence, setting forth compelling reasons for the severance of the marriage relationship. *Sokol v. Sokol*, 205 Pa.Super. 459, 211 A.2d 118 (1965); *Orsuto v. Orsuto*, 171 Pa.Super. 532, 91 A.2d 284 (1952).

At the hearing before the master, appellant testified regarding numerous examples of indignities inflicted upon his person by appellee. The Court of Common Pleas looked at each individual act, discounting each and concluding that it did not constitute a ground for divorce. However, though each factor individually may be insufficient to warrant a divorce, a combination of incidents certainly can support the master's recommendation that a divorce should be granted. As this court said in *Barton v. Barton*, 248 Pa.Super. 278, 375 A.2d 96, 98 (1977).

"Obviously, several . . . factors . . . may coalesce to justify a finding of indignities, although taken separately, no single incident or factor would be sufficient."

See also *Dougherty v. Dougherty*, 235 Pa.Super. 122, 339 A.2d 81 (1975); *Gehris v. Gehris*, supra; *Fodor v. Fodor*, 221 Pa.Super. 321, 292 A.2d 485 (1972); *Gerenback v. Gerenback*, supra.

In the instant case, appellant's accusations ranged from petty (nagging) to serious (physical attacks). While past decisions have held acts such as nagging and the existence of sexual incompatibility are not themselves grounds for divorce, they do evidence settled hate and

estrangement. See, e. g., *Worobey v. Worobey,* 201 Pa.Super. 41, 190 A.2d 167 (1963); *Barton v. Barton,* supra. To be entitled to a divorce on the ground of indignities, the injured spouse must prove that the other party's conduct had rendered life burdensome and intolerable. *Sokol v. Sokol,* supra; *Kramer v. Kramer,* 194 Pa.Super. 538, 168 A.2d 624 (1961). Furthermore, the party seeking the divorce must prove that he was an innocent and injured spouse. *Bonawitz v. Bonawitz,* 246 Pa.Super. 257, 369 A.2d 1310 (1976). Accepting as true appellant's testimony, the evidence indicates that appellee constantly berated appellant, calling him a "sex maniac" and "repulsive"; telling him that he would "go to hell." Appellee also told their daughter that appellant was sinful. She insisted that appellant follow her rules around the house. She tried to force appellant to take on the added responsibility of a deaconship. When appellant resisted, the parties argued and appellee slapped appellant on four separate occasions. Appellee refused to socialize with appellant's co-workers. Furthermore, appellant could not invite these people to his home because appellee thought that they too were sinful. Neither would appellee socialize with appellant's family, telling appellant that they were all bad and going to hell. Appellee refused to adopt a second child despite her promise to do so. Appellee denied appellant sexual relations, except on very rare occasions, when he did something special for appellee. Testimony indicates that appellant went into a deep depression in 1970 while he was living with appellee.

The lower court judge said that he rejected the master's findings of fact because all the master did was reiterate the evidence presented by both sides. The lower court concluded that the master failed to indicate whether he accepted appellant's testimony or appellee's. This is inaccurate. Though the master did state his findings of fact in a way that did not disclose his own conclusions, the master's report, read as a whole, clearly indicates that he accepted only appellant's testimony. This is established in both the "discussion" and "conclusions of law" sections of

the master's report. It is true that the master should have also written his "findings of fact" to indicate that he credited only appellant's testimony. However, we are not going to close our eyes to the rest of the master's report wherein he clearly evinces his acceptance of appellant's testimony and rejection of appellee's.

■ Collectively the evidence depicts more than just a couple who did not get along. Rather, the total evidence indicates settled animosity on the part of appellee towards appellant. We therefore conclude that the lower court was in error for overruling the recommendation of the master. Accordingly we hold that the master's recommendation be followed and hereby order that the divorce be granted based upon indignities.

SPAETH, J., concurs in the result.

VAN der VOORT, J., dissents.

HOFFMAN, J., did not participate in the consideration or decision of this case.