Bruce L. ROTHROCK, Sr., Appellee,

v.

Marilyn E. ROTHROCK, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 12, 2000.
Filed Dec. 29, 2000.

Deborah G. Zitomer, Plymouth Meeting, for appellant.

Nancy P. Wallitsch, Allentown, for appellee.

Before DEL SOLE, HUDOCK and STEVENS, JJ.

DEL SOLE, J.:

¶ 1 Marilyn Rothrock (hereinafter referred to as "Wife") appeals from the final order and decree which provided for the equitable distribution of assets pursuant to an antenuptial agreement upon the parties' divorce. We affirm.

¶ 2 Wife and Bruce L. Rothrock, Sr. (hereinafter referred to as "Husband") were married in 1989. Prior to marriage, the parties executed an Antenuptial Agreement. The parties subsequently separated. Husband filed a divorce complaint against Wife wherein Husband requested a declaratory judgment on the Antenuptial Agreement.

¶ 3 Husband's request for declaratory judgment was granted. The trial court subsequently entered an order holding that the Antenuptial Agreement was valid

and in full force and effect. On December 29, 1993, the trial court entered a bifurcated divorce decree, reserving jurisdiction to determine the economic claims of the parties arising from their marriage.

¶ 4 At the time of the parties' physical separation, Wife allegedly removed various items from a vacation residence owned by Husband's corporation, Rothrock Motor Sales, Inc. As a result, Rothrock Motor Sales, Inc., filed a civil action against Wife. The trial court joined the divorce case with the civil action and named Rothrock Motor Sales, Inc. as a party-plaintiff in the divorce case.

¶ 5 A Master in Divorce was appointed to take testimony and make a recommendation to the trial court on the economic claims of the parties. The Master thereafter filed a report and recommendation to which both parties filed exceptions.

¶ 6 The trial court ruled on the parties' exceptions and remanded the matter to the Master for the sole purpose of further proceedings regarding the personal property claims made in the action by Rothrock Motors, Inc. Wife then filed a Motion for Final Order, thereby abandoning her claim as to the ownership of the personal property in the suit by Rothrock Motors, Inc. Accordingly, the trial court entered a final Decree and Order. This appeal followed.

¶ 7 On appeal, Wife presents the following issues:

1. Whether the Lower Court erred in the interpretation and application of the prenuptial agreement resulting in a patently inequitable and unintended economic outcome for Wife?

2. Did the trial court clearly err in holding that Wife had effectively accepted $100,000 of alimony in lieu of her contractual property rights?

3. Whether the trial court erred in refusing to accept the Master's conclusion that the jointly titled property fell outside the distribution scheme of paragraph 3(b) of the prenuptial agreement?

¶ 8 With regard to the first issue, Wife, in her brief, sets forth basic principles of contract interpretation. After setting forth these tenets of contract interpretation, Wife asserts that:

... the legal conclusions drawn by the trial court are not supported by the Master's findings of fact, nor do they follow the above-referenced principals [sic] of contract construction and as such require this Court to reverse the Order of the trial court and remand this matter to the Master for further findings.

Appellant's Brief at 12. In reviewing the record, we have not found that the trial court's conclusions are legal error, nor does Wife identify additional legal errors committed by the court, other than the two subsequent issues raised by Wife. We will address these claims.

■ ¶ 9 With regard to her second issue, Wife contends that the trial court erred in its interpretation of paragraph 3(b) of the Agreement and in its holding that Wife had effectively accepted $100,000.00 of alimony in lieu of her contractual property rights. We disagree.

¶ 10 The matter in dispute hinges on the construction of the language in paragraph 3(b) of the Agreement. Paragraph 3(b) of the Agreement provides:

(b) If the parties should become divorced from each other following their marriage, they agree to be bound to the terms set forth herein and Marilyn agrees to accept the following sums in full and final settlement of any claim for equitable distribution or of her property rights. .... If they are divorced, Marilyn shall receive for her support and maintenance, the greater sum of either one-half (½) the increase in market value of the property held by the parties over its cost basis or the cash distribution set forth below. ... Marilyn's alimony for her support and maintenance ... shall be: From the date of marriage up to three years after marriage—$50,000.00; after three years of marriage—$100,000.00; .... If the parties are un-

able to agree upon the fair market value of the joint property, it shall be determined by appraisal. Each party shall appoint one appraiser; if the two appraisers are unable to agree upon the fair market value they shall appoint a third appraiser and a decision of the majority of the appraisers shall be binding and conclusive upon the parties. If the appraisers are unable to agree upon the appointment of a third appraiser, this appointment shall be made by the President Judge of the Court of Common Pleas of Lehigh County, Pennsylvania.

Antenuptial Agreement at 7–8. There is confusion regarding the interpretation of the phrase "the greater sum of either one-half (½) the increase in market value of the *property held by the parties* over its cost basis . . .". (emphasis added). Wife argues that the phrase "property held by the parties" is ambiguous and therefore, should be interpreted against the author.

¶ 11 The trial court acknowledged that this phrase is ambiguous as to whether "property held by the parties" refers only to property held jointly by them. While acknowledging that the phrase is ambiguous, the trial court held that the ambiguity was moot because neither party followed the remaining provisions of paragraph 3(b) of the Agreement. The court stated:

The Agreement is ambiguous as to whether "property held by the parties" refers only to property held jointly by them. In any event, the issue is moot because neither party availed themselves of the provisions in paragraph 3(b) to obtain appraisals of the properties. Accordingly, in lieu thereof Wife is entitled to the cash distribution of $100,000.00 set forth in the Agreement.

Trial Court Opinion, 6/4/99, at 7, fn. 5.

¶ 12 Paragraph 3(b) clearly provides that Wife is entitled to the greater sum of either one-half the increase in market value of the property held by the parties over its cost basis or the cash distribution set forth in the Agreement. The Agreement also provides that if the parties are unable to agree upon the fair market value of the joint property, it shall be determined by appraisal. Because the parties did not agree upon the fair market value of the property, they were required, by the contract, to have the value determined by appraisal. Neither party had the property appraised as required. Because neither party presented appraisals of the value of the property, the trial court awarded Wife the contractually set amount of $100,000.00. We agree with the trial court's assessment that there is some logic to the structure of the Agreement. The trial court explained:

. . . [the Agreement] gives Wife the choice of the greater "of either one-half the increase in market value of the property held by the parties over its cost basis" or $100,000.000. In the event the increase in the value of the property was less than $100,000.00 or even if the value of the property actually decreased during the marriage, Wife would still receive $100,000.00. Thus, the Agreement provided for Wife to receive the full benefit [of] any increase in the value of the property, but some benefit as well in the event of declining values.

Trial Court Opinion, 6/4/99, at 7.

¶ 13 In light of the parties' failure to comply with the provisions of paragraph 3(b) requiring an appraiser, and the intent of the Agreement, the trial court did not err in awarding Wife the contractually set alternative provided for in the Agreement.

¶ 14 Furthermore, Wife contends that the trial court's determination that the term "property held by the parties" meant property held jointly by the parties, was a strained interpretation. Appellant's Brief at 18. Although the trial court subsequently held the matter was moot, we do not believe that the trial court's interpretation of this phrase was strained or erroneous. As Wife asserts, where ambiguity of a term exists, a court is free to examine the surrounding circumstances to ascertain

the intent of the parties. The subsequent language in paragraph 3(b) helps to interpret the phrase at issue. When referring to ascertaining the fair market value of the property in this paragraph, the paragraph provides: "If the parties are unable to agree upon the fair market value of the **joint property**, it shall be determined by appraisal." (emphasis added). Here the language of the very paragraph containing the ambiguous phrase refers to the property as "joint property". Such language supports the conclusion of the trial court.

■ ¶ 15 Wife next contends that the trial court erred in refusing to accept the Master's conclusion that the jointly titled property fell outside the distribution scheme of paragraph 3(b) of the Agreement. Wife urges that the trial court should have adopted the analysis by the master and his credibility determinations.

■ ¶ 16 In divorce cases, the evidence must be considered *de novo* at every stage of review. *Coxe v. Coxe,* 246 Pa.Super. 231, 369 A.2d 1297, 1297 (1976). The report of the master is entitled to great consideration in that he has heard and seen the witnesses, and it should not be lightly disregarded. It is advisory only, however, and the reviewing court is not bound by it and it does not come to the court with any preponderate weight or authority which must be overcome. *Arcure v. Arcure,* 219 Pa.Super. 415, 281 A.2d 694, 695 (1971). The reviewing court must consider the evidence, its weight and the credibility of the witnesses, *de novo. Id.* The Master's report is not controlling, either on the lower court or on the appellate court. *Id.*

■ ¶ 17 The trial court was not required to abide by the Master's report. The master's report was advisory only. Wife, however, points to the accepted exception to this general rule:

> [t]he Master's recommendation is advisory only[,] the exception to this general rule is that in determining issues of credibility the Master's findings must be

given the fullest consideration for it was the Master who observed and heard the testimony and demeanor of various witnesses.

Appellant's Brief at 27. While in cases where the issue is one of credibility the findings of the master should be given fullest consideration, this is not to say that the master's conclusions regarding credibility are binding on the reviewing court, but where the record alone does not indicate which party's testimony should be credited, the determination of the master can tip the balance. *Mintz v. Mintz,* 258 Pa.Super. 187, 392 A.2d 747, 749 (1978).

¶ 18 The issue at question in this case, however, is not one of credibility. The determination of the Master in this case was not which witness was more credible. Rather, the issue in this case was the interpretation of the Antenuptial Agreement, and the Master determined that the Florida and Pennsylvania property were outside the scope of the Agreement. Accordingly, this finding by the Master does not fit within the exception to the general principle, as Wife urges.

¶ 19 The trial court was not required to accept the findings or analysis of the Master. The trial court was required to conduct a *de novo* review of the record, which it did.

■ ¶ 20 In reviewing the issue and the Master's report and recommendation, the trial court found that the transfers of real property to the Wife were "... as marital property and thus within the scope of paragraph 3 of the Agreement." Trial Court Opinion, 6/4/99, at 8. The trial court found that the Agreement does not provide that transfers of real property as "gifts" to the Wife are outside the scope of the Agreement. Rather, paragraph 8 of the Agreement, merely provides that transferring property into joint ownership shall not be construed as a waiver of the Agreement. The trial court stated that: "Had Husband made a transfer outright to Wife in the nature of gift intending to be outside

of the scope of the Agreement and not to be construed as "marital property" but as Wife's separate property, then such action would have been accorded its full intent." Trial Court Opinion, 6/4/99, at 8. Accordingly, we find that the trial court did not err in not accepting the Master's report and recommendation and in finding that the transfer of the property was as "marital property" within the scope of the Agreement.

¶ 21 Order and Decree affirmed.