J-S33005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROBERT J. PANEK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DIANA PANEK, | |
| Appellee | No. 59 MDA 2017 |

Appeal from the Order Entered December 8, 2016
In the Court of Common Pleas of Lackawanna County
Domestic Relations at No(s): 16-DRO-0250 PACES NO. 004115837

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 01, 2017**

Robert J. Panek (Husband) appeals from the order entered on December 9, 2016, that denied his exceptions to a master's report. The order also concluded that Husband's and Diana Panek's (Wife) agreement entitled "Marital Separation Agreement" (Agreement) was a valid and enforceable post-nuptial agreement that barred spousal support and alimony. After review, we affirm.

In Husband's brief, he sets forth the following eight issues for our review:

> I.  Whether the [c]ourt erred finding that the "Marital Settlement [sic] Agreement" signed by the parties was a valid agreement as Pennsylvania does not recognize legal separation pursuant to the

---

[*] Retired Senior Judge assigned to the Superior Court.

Pennsylvania Divorce Code, 23 Pa.C.S.[] §§ 3301(c) and 3301(d)?

II.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" signed by the parties was not a separation agreement but instead an enforceable postnuptial agreement?

III.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" was valid despite [Husband's] contention that he was under duress at the time of execution of the Agreement?

IV.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" was valid despite [Husband's] contention that [Wife] misrepresented the permanency and terms and conditions of the Agreement to him at the time of execution of the Agreement?

V.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" was valid despite [Husband's] contention that he was coerced into signing the Agreement by [Wife]?

VI.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" was valid despite [Husband's] contention that he did not understand the terms and conditions of the Agreement?

VII.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" was valid despite [Husband's] contention that the Agreement is not compliant with and is invalid and nonbinding in conjunction with the laws and rules of the Commonwealth of Pennsylvania?

VIII.  Whether the [c]ourt erred as a matter of law and abused its discretion in finding that the "Marital Settlement [*sic*] Agreement" was a legally binding contract?

Husband's brief at 9-10.

Initially, we must comment on the inadequacies of Husband's brief. Although Husband has listed eight separate issues that he submits for this Court's review, he has not complied with Pa.R.A.P. 2119(a), which states that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part … the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Rather, Husband merely provides four pages of argument in which he purports to address all eight issues. Moreover, he has not included any citations to case law to support his positions relating to his arguments.

Due to the failure to abide by the rules of appellate procedure, Husband's appeal could be dismissed. However, following our review of the certified record, the briefs of the parties, the applicable law, and the well-reasoned analysis provided by the Honorable Julia K. Munley of the Court of Common Pleas of Lackawanna County in her opinion dated February 2, 2017, we conclude that Judge Munley has correctly disposed of the issues presented. Accordingly, we adopt her opinion as our own and affirm the order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/1/2017</u>

ROBERT J. PANEK,  : IN THE COURT OF COMMON PLEAS
     Plaintiff  :    OF LACKAWANNA COUNTY
   :
VS.  :    CIVIL ACTION – LAW
   :
DIANA PANEK,  :    PACSES 004115837
     Defendant  :    16– DRO – 0250

## OPINION

This Court issued an Order dated December 8, 2016 regarding Defendant's

exceptions to the Master's Report in the above-referenced matter. An Appeal was filed and

the opinion in support of that Order is now ripe and as such, is addressed below on this 2nd

day of February, 2017.

MUNLEY, J.

### I.    FACTUAL AND PROCEDURAL HISTORY

Robert J. Panek ("Husband") and Diana Panek ("Wife") were married on June 27,

1992 in Scranton, Pennsylvania. The parties separated in June 2014. No divorce action has

been initiated to date.

On June 23, 2014 the parties signed and had notarized a five (5) page document

entitled "Marital Separation Agreement" (hereinafter "Agreement"). *See* Master's Hearing

Transcript, ("H.T.") 6/6/2016, p. 11. The Agreement contained the following paragraph:

> 5.01. ALIMONY/SPOUSAL SUPPORT. Neither party shall
> receive any alimony and/or supposal (sic) support from the
> other party.

*See* Agreement, attached as Exhibit B to Brief in Opposition of Plaintiff's Exceptions to
Support Order, 10/30/2016.

By way of background, Husband filed a Complaint seeking spousal support on

March 18, 2016, which was dismissed by Court Order dated April 27, 2016. Husband

RECEIVED FEB - 2 2017 LACKAWANNA COUNTY DOMESTIC RELATIONS SECTION

1

appealed that dismissal on May 6, 2016, and a Master's hearing was held on June 6, 2016 before Kathryn A. Karam, Esquire, Master in Support (hereinafter "Master"). After a *de novo* hearing, the Master found that the parties had entered into a valid separation agreement barring both parties from claiming spousal support. The Master recommended dismissal after finding that Husband waived his right to support under a valid contract he previously entered into with Wife. *See* Master's Findings of Fact and Conclusions of Law, 9/22/2016.

At the Master's hearing, Husband testified that he did not ask for the Agreement to be drafted, which Husband claimed was done by Wife's uncle, Paul Smith, Esquire. H.T. at 10. Husband testified that the Agreement included provisions regarding division of property, custody, child support, medical and dental insurance coverage for Husband, taxes, debts of the parties, alimony, spousal support, pensions, financial accounts and life insurance policies, full disclosure, and right to live separate and apart. Id. at 11. Husband identified his signature on the document. Id.

When asked if he knew what he was signing, Husband replied, "[n]ot exactly- I just wanted to leave and get away from her. I thought it would be legal. I figured I trusted her. She took care of the bills for 20 years. I didn't think she was going to set me up to kill me." Id. at 12.

Additionally, Husband testified that he did not have an attorney review the Agreement. Id. When asked how the idea of the Agreement originated, Husband replied that he wanted something so he "wouldn't get in trouble with the bank on our mortgage." Id. at 14, 22-23. Husband admitted that the Agreement removed his name from the marital home, and that he understood that this was permanent. Id. at 29.

2

The testimony indicates that since he entered into the Agreement, Husband reaped its benefits and abided by the conditions of the Agreement until December 2015. Id. at 24-25. At that time, Husband's girlfriend broke up with him and he was having a difficult time. Id. Further, Husband agreed that he told Wife around that time period that he wished he had not given up on their marriage and needed money to live. Id. at 25.

Husband testified that he makes $26,000.00 per year as a Dupont Borough Supervisor, and had been so employed for two (2) years. Id. at 27. Currently, Husband stated that he works thirty-six (36) hours per week, but may work more during the winter months if he has to plow roads. Id. at 32. Husband holds a Class D license for heavy equipment certification. Id. at 29-30. Husband also previously earned $40,000.00 per year driving a dump truck and working 60 to 65 hours, per his testimony. Id. at 30. Husband testified that to this day he still uses his Class D license. Id. at 31-32.

Wife testified that her yearly income as of 2015 was $47,028.00 as an employee of Children and Youth Services of Luzerne County. Id. at 39. Wife, as of the time of the hearing, continued to pay for Husband's medical and dental insurance as provided in the Agreement. Id. at 44-45.

Husband filed exceptions to the Master's Report. Additionally, Husband filed a Brief in Support of Plaintiff's Exceptions to the Support Order on November 14, 2016. Husband raised the following issues in his brief at the time:

> 1) That the Master erred in finding that the document signed by the parties was a valid agreement, as Pennsylvania does not recognize separation agreements.
>
> 2) That the Agreement is invalid as Husband was under duress at the time of execution of the agreement.

3

3)     That Wife misrepresented to Husband the permanency of the Agreement.

4)     That Husband was coerced into signing the Agreement.

5)     That Husband did not understand the terms and conditions of the Agreement.

6)     That Wife misrepresented the terms and conditions of the Agreement to Husband.

7)     That the Agreement is not compliant with the laws and rules of the Commonwealth of Pennsylvania.

8)     That the Agreement was invalid and nonbinding in conjunction with the laws and rules of the Commonwealth of Pennsylvania.

Oral arguments on Husband's exceptions were held before this Court on December 7, 2016 wherein Husband was ably represented by Thomas J. Killino, Esq. and Wife appeared *pro se*. This Court entered an Order dated December 8, 2016 dismissing Husband's exceptions and finding that the document was a valid and enforceable agreement. *See* Court Order, 12/08/16.

## II.     DISCUSSION

Under the laws of this Commonwealth, a master's findings are appealable by either party and such appeal is a *de novo* review by the Court. *Arcure v. Arcure*, 281 A.2d 694, 695 (Pa. 1971). While a master's findings are not absolutely binding on the court, they are entitled to significant weight. *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003). Absent a clear showing that a master's recommendation is erroneous, the recommendation should not be set aside. *Mintz v. Mintz*, 392 A.2d 747, 749 (1978). "To set the recommendation aside would be to undermine the master system and would be questionable in light of the fact that the master heard and saw the witnesses." *Id.*

4

Husband's exceptions are listed below and addressed in turn.

1) <u>That the Master erred in finding that the document signed by the parties was a valid agreement, as Pennsylvania does not recognize separation agreements</u>

Husband's assertion that Pennsylvania does not recognize separation agreements is in error. Pennsylvania does indeed recognize and enforce separation agreements. *See In re Ray's Estate*, 304 Pa. 421, 156 A. 64 (1931); *Vaccarello v. Vaccarello*, 563 Pa. 93, 757 A.2d 909 (2000). An analysis of Pennsylvania law regarding the recognition of separation agreements, however, is not necessary. This Court finds that the Agreement was an enforceable postnuptial agreement.

The distinction between a separation agreement and a postnuptial agreement lies in the intent of the parties. If the intent of the parties was to fully and finally settle their respective property rights, the agreement is to be construed as a postnuptial agreement. *Makowski v. Makowski*, 163 Pa. Super. 441, 62 A.2d 71 (1948).

"In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005). If intent is not clear from the writing, "the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions." *Espenshade v. Espenshade*, 729 A.2d 1239, 1243 (Pa. Super. 1999). "The court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." *Stamerro*, 889 A.2d at 1258 (Pa. Super. 2005).

5

In this case, the Agreement itself is not at all ambiguous. Rather, the language of the 2014 Agreement is quite clear in setting out the parties' intentions in entering into the contract, that is to settle finally their respective property rights and duties and to be bound by the provisions of the Agreement. The Agreement contains provisions distributing property to Wife and property to Husband, which includes the marital home, three automobiles, and a boat. Agreement at ¶¶ 3.00, 3.01. The Agreement also contains provisions regarding Husband and Wife's respective pensions and prevents the other party's receipt of a spouse's individual pension funds. Id at ¶ 5.01. The Agreement also provides for Husband to remove his name from the parties' joint bank accounts. Id. at ¶ 5.04. Another paragraph of the Agreement establishes that Wife agrees to maintain Husband on her medical and dental insurance coverage until the entry of a divorce decree. Id. at ¶ 5.03.

The Agreement additionally reads in paragraph 2.02 as follows:

> "This Agreement shall survive any action for divorce and decree of divorce *and shall forever be binding and conclusive-* ----The adequacy of the consideration for all agreements herein contained is stipulated, confessed and admitted by the parties, *and the parties intend to be legally bound."*

Id. (emphasis added).

This Court, in reviewing the plain language of the Agreement, finds that it is a valid and enforceable postnuptial agreement.

Further evidence of the parties' intentions was provided by Husband's testimony. Husband testified regarding the transfer of the marital home, which Husband agreed was permanent. H.T. at 28-29. Husband also testified to his continued enjoyment of health insurance and dental coverage by Wife pursuant to the Agreement, and Wife's execution of

6

the documents necessary for Husband to withdraw funds from his 401K retirement funds. Id. at 11, 19, 23-24.

The title of the Agreement herein is also not dispositive of the issue. In *Vaccarello*, *supra*, the agreement in question was titled "Separation and Property Settlement Agreement." 757 A.2d at 910. In reviewing the agreement in *Vaccarello*, the Pennsylvania Supreme Court held, however, that the plain language of the agreement demonstrated that the parties intended it to be a final settlement and determination of their respective property rights, and as such, it was an enforceable postnuptial agreement. Here, this Court finds that the Agreement in this case is a valid and enforceable postnuptial agreement for the same reasons.

## 2) That the Agreement is invalid as Husband was under duress at the time of execution of the agreement.

It is well-established that the law of contracts governs marital settlement agreements. *Kripp v. Kripp*, 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004) (citing *Vaccarello*, 757 A.2d at 914.) "[A]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *Simeone v. Simeone*, 525 Pa. 392, 400, 581 A.2d 162,165 (1990); *Stoner v. Stoner*, 572 Pa. 665, 819 A.2d 529 (2003). Therefore, if Husband can establish that he was under duress at the time of execution, there would be grounds to invalidate the Agreement. In this case, however, Husband has not pointed to anything on the record that even remotely indicates that Husband was under duress.

Duress is defined as:

> "That degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.... Moreover in the absence of threats of actual harm

7

there can be no duress where the contracting party is free to consult with counsel."

*Adams v. Adams*, 414 Pa. Super. 634, 607 A.2d 1116, 1119 (1992).

The language of the Agreement and the signatures of the parties prove that the parties carefully considered its provisions before entering into it. Paragraph 6.06 of the Agreement is an acknowledgement and declaration that each party, among other things, entered into the contract voluntarily and gave careful and mature thought to the making of the contract.

None of the testimony presented by Husband establishes duress. Husband testified that he wanted to leave the marriage and get away from Wife. H.T. at 12. He also testified that he trusted Wife to handle matters since she took care of the couple's bills for twenty (20) years. Id. Husband also testified that he "did not want to get into trouble," referring to financial trouble over the couple's mortgage on the marital home. Id. at 12, 14. Without more, Husband's duress argument fails.

Also instructive is *Lugg v. Lugg*, 2013 Pa. Super 67, 64 A.3d 1109 (2013). In *Lugg*, the appellant-wife attacked the validity of the parties' postnuptial agreement on the grounds of duress. 64 A.3d at 1113. Appellant-wife's claim was that Appellee-husband subjected her to daily badgering and, on the date of execution of the agreement, to some one and one-half hours of continual pressure and negotiations. Id. at 1114. This apparently caused the Appellant-wife to "cave in" and sign the agreement. The Court rejected wife's claim, holding that mere badgering, pressure and negotiations did not rise to the level of coercion necessary to find duress. Id.

Here, this Court finds nothing in the record to support Husband's claim of duress, and so rejects Husband's argument that the Agreement should be invalidated on that basis.

Additionally, the Court takes cognizance that, as with any other contract, even a voidable postnuptial agreement is subject to the doctrine of ratification. Ratification results if a party executing a contract under duress sits on his or her rights and reaps the benefits flowing from it, or remains silent or acquiesces in the contract for any considerable length of time after the party has the opportunity to annul or avoid the contract. *National Auto Brokers Corp. v. Aleeda Development Corp.*, 243 Pa. Super 101, 364 A.2d 470 (1976).

Here, Husband reaped the benefits of the contract. Wife continues to pay for Husband's medical insurance as contemplated under the Agreement, which was executed almost two years before Husband's Complaint. H.T. at 23-24. As noted above, this Court has been unable to find a scintilla of evidence in the record to support a finding of duress. However, even if such evidence was present in this case, Husband's acceptance of the benefits of the contract, his prolonged silence, and his previous failure to challenge the contract for close to two years, indicates ratification of the Agreement by Husband.

### 3) That Wife misrepresented to Husband the permanency of the Agreement; and 6) that Wife misrepresented the terms and conditions of the Agreement to Husband;

Husband also argues that Wife misrepresented the permanency, as well as the terms of conditions of the Agreement, which this Court will address together. As above-noted, fraud or misrepresentation may be grounds to invalidate a postnuptial agreement. However, nothing in the testimony or evidence presented at the Master's Hearing or during oral argument indicates that Wife misrepresented anything to Husband.

Husband testified at the Master's Hearing that he did not understand the Agreement and did not know that it was definite: "…and I thought it was something just to get away and not to be in trouble. I didn't think it was permanent." H.T. at 12. This testimony does

9

not establish misrepresentation by Wife. There was no testimony that Wife did anything to foster Husband's belief that the Agreement he was signing was temporary.

The Agreement by its own terms clearly indicates that the Agreement was intended to be permanent. The term: "forever be binding and conclusive on the parties" in paragraph 2.02 of the Agreement clearly and unambiguously indicates the permanent nature of the Agreement. Paragraph 6.06 sets out that both parties were fully and completely informed as to the facts relating to the subject matter of the agreement, that the parties had carefully read each provision of the Agreement and understood each provision of the Agreement. Husband also signed the Agreement before a notary, indicating that Husband was physically free to object to signing, or to seek advice of counsel if he was uncertain of any of its terms.

Even if there was evidence of misrepresentation by Wife in the record, a material misrepresentation renders a marital settlement agreement voidable not void under general contract principles. *See In re Estate of Long*, 419 Pa. Super. 389, 392, 615 A.2d 421, 422 (1992) (citing *Germantown Mfg. Co. v. Rawlinson*, 341 Pa.Super. 42, 491 A.2d 138 (1985)) (prenuptial agreement). This Court thus rejects Husband's arguments of misrepresentation based on the evidence of record.

> **4) That Husband was coerced into signing the Agreement; and 5) That Husband did not understand the terms and conditions of the Agreement**

As with Husband's allegations concerning duress and misrepresentation, the Court finds nothing in the record to support Husband's allegation of coercion. The same analysis set forth above, including, but not limited to: a) the plain language of the Agreement indicating the voluntary nature of Husband's signature; b) Husband's ability to seek legal

10

counsel; and c) Husband's ability to object to signing the Agreement, all militate against a finding of duress, fraud, misrepresentation, or coercion.

Husband's arguments that he did not understand the terms and conditions likewise fail for the reasons addressed above.

> 7) **That the agreement is not compliant with the laws and rules of the Commonwealth of Pennsylvania; and 8) That the agreement was invalid and nonbinding in conjunction with the laws and rules of the Commonwealth of Pennsylvania**

Husband argues that the Agreement is illegal, but does not cite which "laws and rules" the Agreement violates.

Under Pennsylvania law, "in the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court." 23 Pa. C.S.A. §3105(c). (West). As such, this Court finds that the Agreement is compliant with the laws and rules of the Commonwealth of Pennsylvania

## III.     CONCLUSION

For the reasons stated above, this Court also finds that the Agreement entered into by the parties was and remains both valid and binding on the parties. Based on the foregoing, this Court issued the Order dated December 8, 2016 dismissing Defendant's exceptions to the Master's report.

BY THIS COURT:

_____, J.
JULIA K. MUNLEY, JUDGE

11