J-A08036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONALD ALEXANDER MASSARI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIMBERLY JEAN MASSARI | : | No. 1028 WDA 2022 |

Appeal from the Order Entered August 2, 2022
In the Court of Common Pleas of Washington County Civil Division at
No(s):  2012-613

BEFORE:  STABILE, J., SULLIVAN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                **FILED:  April 20, 2023**

Ronald Alexander Massari (Husband) appeals an order of the Court of Common Pleas of Washington County (trial court) denying his exceptions to the Report and Recommendations of the divorce master concerning the distribution of property and payment of alimony to his former spouse, Kimberly Jean Massari (Wife), pursuant to the parties' Marital Property Settlement Agreement (Agreement).  We affirm.

**I.**

Husband and Wife were divorced on August 21, 2012, and the Agreement was incorporated into their divorce decree.  The Agreement provided in pertinent part that Wife would receive full ownership of a residence

---

* Retired Senior Judge assigned to the Superior Court.

located at "1504 N. Randolph Dr., Jefferson Hills, PA 15025" (the residence).
Martial Settlement Agreement, 8/21/22, at para. 3. In taking ownership of
the residence, Wife incurred a corresponding obligation to pay a "GMAC" home
equity loan which totaled $60,000 at the time the Agreement was entered.
*See id*. at para. 5.

Additionally, Husband agreed to pay alimony to Wife in the amount of
"$1,400 per month, beginning on 09/01/2011 to terminate after 120 months
or on the death or remarriage of the payee, whichever occurs first." *Id*. at
para. 7. In total, Wife would be paid $168,000 by the end of the alimony
period. The Agreement did not give Husband the option of paying Wife's debts
*in lieu* of his monthly obligation to pay her $1,400 in cash.

Despite the above provisions in the Agreement giving ownership of the
residence to Wife, Husband sold the residence in 2019 for $205,000. He also
did not pay Wife the full amount of alimony during any of the months required
by the terms of the Agreement, instead writing her monthly checks for about
$150, totaling approximately $18,000 from 2012 to 2019. On December 27,
2021, Wife filed a motion to enforce the Agreement.

The master held a hearing on the motion at which Husband and Wife
both testified. Wife was represented by counsel at this hearing, but Husband
was not. The main points of dispute between the parties were whether Wife
knew of and consented to the sale of the residence prior to closing, and

whether the parties had ever verbally modified the Agreement to permit Husband to satisfy his alimony obligations by paying Wife's debts.

Wife testified that following the divorce in 2012, the residence was leased monthly to tenants for $1,850, which Husband collected and used part of to pay Wife's $1,100 rent for a townhome she lived in for seven years. Because Husband stopped paying Wife's rent in November 2018, Wife soon became homeless. After the residence was sold for $205,000 on April 2, 2019, Husband sent Wife a check for $50,000. Husband claimed that he had included a "letter of explanation" with the check, but Wife denied that she received such a letter and nothing of the sort was entered into evidence. Husband also denied that he was consistently collecting rental income from the residence throughout the period in question.

According to Wife, Husband failed to give her advance notice of his intent to sell the residence. She testified that she only discovered the sale when she visited the residence and unexpectedly met the new owners, who showed her proof of their purchase. In her petition, Wife claimed that the Agreement entitled her to unpaid alimony and the remaining proceeds of the sale of the residence.

After assessing the parties' respective claims, evidentiary submissions and credibility, the master determined that Husband breached the Agreement by selling the residence without Wife's consent, and that Husband could not offset his alimony obligations by paying bills on Wife's behalf. ***See*** Report and

Recommendations, 1/31/2022, at pp. 21-23. Accordingly, the master found that Wife was entitled to a total award of $236,000.

This total award amount was derived in part from the sale of the residence. The master found that Wife was due $86,000 from the sale by accepting Husband's assertion that after all deductions and closing costs had been subtracted from the purchase price (including paying off the total balance due on the GMAC loan), $136,000 remained. Since Husband had already given Wife $50,000 of that sum, she was entitled to the remaining funds under the Agreement. The master then awarded Wife $150,000 for unpaid alimony by giving Husband an $18,000 credit for the amount that he paid to wife during the period in question.[1] The master did not factor into the calculation Husband's payment of Wife's rent or any other expenses and services Husband had allegedly provided to Wife. Although the master found that Husband had received $1,850 per month in rental income from the residence in violation of the Agreement, this figure was also not factored into any of the master's calculations.

Husband filed exceptions to the Report and Recommendations on February 18, 2022. He contended that the master had erred in determining

---

[1] Under the Agreement, Husband was obligated to pay Wife $1,400 for 120 months, which totals $168,000 over a ten-year span. The parties agreed that Husband paid Wife $18,000 in alimony, leaving an unpaid alimony amount of $150,000.

that the residence had been yielding rental income prior to its sale; that the master had miscalculated the amount due to Wife from the sale of the home by crediting her with paying off the GMAC home equity loan; and that the master had erred in declining to give Husband alimony credits based on various payments he had made on Wife's behalf.

The trial court held a hearing on Husband's exceptions on August 1, 2022. A day later, the trial court entered an order fully adopting the master's Report and Recommendations and denying Husband's exceptions. *See* Trial Court Order, 8/1/2022, at 1. Husband timely appealed that order and he raises three issues in his brief.

First, Husband argues that the trial court abused its discretion in denying his exception as to the finding that he received rental payments from tenants at the residence prior to its sale in 2019. Second, he contends that the trial court abused its discretion in miscalculating the amount due to Wife from the sale of the residence. Third, he asserts that the trial court abused its discretion in declining to find that his third-party payments on Wife's behalf had satisfied his alimony obligations to Wife under the Agreement.

## II.

### A.

We review "a challenge to the trial court's equitable distribution scheme for an abuse of discretion." *Id*. We will not find an abuse of discretion "unless the law has been overridden or misapplied or the judgment exercised was

manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Carney v. Carney**, 167 A.3d 127, 131 (Pa. Super. 2017) (citation omitted).

In cases where a master has presided, the master's "report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [master] has the opportunity to observe and assess the behavior and demeanor of the parties." **Childress v. Bogosian**, 12 A.3d 448, 455–56 (Pa. Super. 2011) (citation omitted). However, the "report is not controlling, either on the lower court or on the appellate court." **Rothrock v. Rothrock**, 765 A.2d 400, 404 (Pa. Super. 2000). Instead, "[t]he reviewing court must consider the evidence, its weight[,] and the credibility of the witnesses, *de novo.*" **Id**.

"When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." **Kraisinger v. Kraisinger**, 928 A.2d 333, 339 (Pa. Super. 2007) (quoting **Stamerro v. Stamerro**, 889 A.2d 1251, 1257 (Pa. Super. 2005)). "On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion." **Id**.

"Marriage settlement agreements are governed by the law of contracts." **Sorace v. Sorace**, 655 A.2d 125, 127 (Pa. Super. 1995). "Because contract

interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Mazurek v. Russell***, 96 A.3d 372, 378 (Pa. Super. 2014) (quoting ***Stamerro***, 889 A.2d at 1257). "The court must construe the contract only as written and may not rewrite the contract or give it a construction that conflicts with the plain, ordinary and accepted meaning of the words used." ***Sorace***, 889 A.2d at 127 (internal citations omitted). "A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident, or mistake." ***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa. Super. 2004).

"Once a contract has been formed, its terms may be modified only if both parties agree to the modification and the modification is founded upon valid consideration." ***J. W.S. Delavau, Inc. v. Isaslern America Transport & Warehousing, Inc.***, 810 A.2d 672, 681 (Pa. Super. 2002). "An oral modification of a written contract must be proved by clear, precise and convincing evidence." ***Fina v Fina***, 737 A.2d 760 (Pa. Super. 1999).

**B.**

Husband first argues that the trial court abused its discretion in denying his exception to the finding that he received rental payments from tenants at the residence prior to its sale. We find no abuse of discretion in this regard because, as noted by the trial court, it was irrelevant for present purposes whether Husband received rental income from the residence before he sold it.

*See* Hearing Transcript, 8/1/2022, at pp. 5-7. Regardless, he was still obligated to pay Wife $1,400 per month in alimony, and Wife fully owned the residence under the Agreement. Husband's alleged collection of rent had no bearing on the trial court's calculations as to what Husband owed Wife under the terms of the Agreement.

Husband's second claim is that the trial court relied on an incorrect calculation of the net proceeds of the sale of the residence when determining that he owes Wife a sum of $86,000 from that transaction. However, this claim has no merit because the trial court's calculation was based on Husband's own unrefuted testimony. At the hearing before the master, Husband admitted that Wife received full ownership of the residence under the terms of the Agreement. Yet in 2019, Husband sold the residence for $205,000. *See* Hearing Transcript, 1/24/2022, at p. 54. He testified that after paying off the GMAC loan on the residence at closing and resolving other closing costs, there remained $136,000, of which Husband only paid Wife $50,000. *See id*. at p. 57.

The trial court concluded that since Wife fully owned the residence under the terms of the Agreement, Husband owed Wife the remaining balance of $86,000. We find no abuse of discretion in the trial court's adoption of those calculations, as they are fully supported by the record. Since the Agreement conferred full ownership of the residence to Wife, she is entitled to all of the net proceeds of the home's sale.

Husband's final claim is that his various payments on Wife's behalf should have been credited against his alimony obligations under the Agreement. He argues that his third-party payments of Wife's expenses, such as monthly rent of $1,100 for 80 months ($88,000), allowed him to satisfy his alimony obligations because he and Wife had verbally modified the terms of the Agreement. **See** Hearing Transcript, 1/24/2022, at pp. 56-57. This argument lacks merit for several reasons.

First, the trial court did not accept Husband's testimony that the parties had orally modified the agreement requiring him to pay $1,400 in alimony, instead crediting Wife's testimony that no such modification had ever taken place.[2] Second, the rental payments Husband made for Wife ($1,100 per month) were more than offset by the $1,850 per month that Husband received from tenants of a residence that Wife owned.[3]

---

[2] Husband presented no evidence of a verbal modification of the Agreement.

[3] Husband also argues in his brief that "alimony" is an ambiguous term which is not defined in the Agreement, allowing for a reasonable interpretation that paying Wife's rent and other expenses should be credited against his alimony obligations. We note that Husband raises this ambiguity argument for the first time on appeal, precluding us from considering the merits of that specific ground. **See** Pa.R.A.P. 302 (issues not properly raised and preserved before the trial court "are waived and cannot be raised for the first time on appeal."). Both the master and the trial court evaluated Husband's request for alimony credit solely in the context of whether there was a modification of the Agreement (there was not). **See** Report and Recommendations, 2/2/2022, at 14-15; **see also** Trial Court 1925(a) Opinion, 10/25/2022, at 4-5. Thus, the ambiguity ground is unpreserved for appellate review.

Husband makes a sub-claim in his brief that the master erroneously precluded him from introducing evidence substantiating the payments he had made on behalf of Wife, establishing Husband's right to withhold some of the proceeds of the sale of the residence. This argument is unavailing because the Agreement conferred on Wife full ownership of the residence – Husband had no right to sell it, as he did, without her consent, much less retain any funds from the sale. Further, and as discussed above, it was immaterial whether Husband made payments on behalf of Wife because the Agreement required him to make monthly alimony payments directly to Wife, and Husband introduced no evidence that the parties had agreed to modify those terms. Thus, no relief is due as to Husband's sub-claim.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2023

- 10 -